**Idowu ODUNLADE, et al., Relators,**

v.

**CITY OF MINNEAPOLIS, et al., Respondents,**

**County of Hennepin, et al., Respondents.**

**No. A11–1832.**

Supreme Court of Minnesota.

Dec. 19, 2012.

Laura M. Thomas, University of Minnesota Law School Civil Practice Clinic, Minneapolis, MN, and Michael D. Gavigan, David L. Wilson, Wilson Law Group, Minneapolis, MN, for relators.

Susan L. Segal, Minneapolis City Attorney, James A. Moore,. Gregory P. Sautter, Amanda Trelstad, Assistant Minneapolis City Attorneys, Minneapolis, MN, for respondents City of Minneapolis, et al.

Michael O. Freeman, Hennepin County Attorney, Lisa C. Hahn–Cordes, Assistant Hennepin County Attorney, Minneapolis, MN, for respondents County of Hennepin, et al.

## OPINION

GILDEA, Chief Justice.

Relators Idowu Odunlade, Kimberly Larson, Charles Enck, Kent Lageson, Timothy Wesbrook, Jose Llangari, and Andrea Kral ("relators") represent a puta-

tive class including all residential property owners in three Minneapolis neighborhoods: Camden, Near North, and Phillips. Relators challenge the assessed values respondent City of Minneapolis placed on relators' properties, and allege that because their properties were overvalued, relators were required to overpay property taxes in 2009, 2010, and 2011. The tax court granted respondents' motion to dismiss for failure to state a claim. Because relators allege that respondents' assessment practices are illegal, the court held that Minn.Stat. ch. 278 (2012), provides the relators' exclusive remedy.[1] The court then concluded that relators' 2008 and 2009 claims are untimely under chapter 278, and that the 2010 claims fail because chapter 278 does not allow multiple taxpayers to file a single action concerning multiple properties. The court also determined that relators' claims for declaratory and mandamus relief, and their constitutional claims fail on the merits. Relators sought certiorari review in our court pursuant to Minn.Stat. § 271.10 (2012).

Because we conclude that relators' claims are covered by chapter 278, we agree with the tax court that relators' claims based on the 2008 and 2009 tax years are untimely, and that their claims for declaratory and mandamus relief are precluded; we also agree that relators' constitutional claims fail on the merits. But because the plain language of chapter 278 allows multiple taxpayers to file one tax action concerning multiple properties, we conclude that the tax court erred in dismissing the seven named relators'

claims based on the 2010 tax year to the extent those claims allege a violation of Minn.Stat. § 273.11 (2012).[2] We therefore affirm in part, reverse in part, and remand.

This action arises from assessments of relators' respective properties for property tax purposes for tax years 2008 (payable in 2009), 2009 (payable in 2010), and 2010 (payable in 2011). Relators allege that although they purchased their respective properties in "arms' length transactions," respondents refused to recognize these sales in determining the value of relators' properties. Rather than use the purchase prices relators paid for their respective properties, respondents allegedly used earlier sales of the properties. In these earlier sales, relators allege that the properties sold for much higher prices than the prices for which relators bought their properties. As a result of the respondents' use of these earlier transactions, relators contend that their properties were valued higher than their actual market value. Relators' amended complaint asserts, generally, that. respondents' refusal to consider relators' allegedly arms-length purchases when assessing real property values in 2008, 2009, and 2010 "constitute[d] illegal and unequal property tax assessment."

Relators allege that respondents' assessments of their properties violate relators' federal and state rights to equal protection, the uniformity clause of the Minnesota Constitution, and Minn.Stat. § 273.11, which requires property to be assessed at its market value for taxation purposes.[3] Relators seek declarations, pursuant to the

---

1. The tax court also granted the Hennepin County respondents' motion for judgment on the pleadings. Relators do not seek review of this aspect of the tax court's decision.

2. This statute requires that property be assessed for taxation purposes at its market value. Minn.Stat. § 273.11, subd. 1.

3. Relators' amended complaint also alleged a violation of their right to due process, but relators do not challenge on appeal the dismissal of their due process claims.

Uniform Declaratory Judgments Act, Minn.Stat. § 555.01 (2012), that respondents violated relators' federal and state equal protection rights, state constitutional right to uniform taxation, and statutory right to have their property tax assessments based on market value. With respect to the 2008 and 2009 assessments, relators also seek writs of mandamus "requiring reassessment of all residential property" located within relators' putative class neighborhoods and credits for overpayment. With respect to the 2010 assessments, relators seek a writ of mandamus requiring reassessment and reissuing of valuation notices. Pursuant to 42 U.S.C. §§ 1983 and 1988 (2006), relators seek damages and attorney fees for violations of their federal right to equal protection. Finally, relators seek damages "equivalent to the amount any [relator] overpaid in property taxes" in 2009 and 2010.

The tax court dismissed all of relators' claims. The court first considered whether relators' claims could have been brought under Minn.Stat. ch. 278. Because chapter 278 provides the exclusive "remedy for challenging property taxes on five statutorily enumerated bases, namely allegedly improper valuation, classification, exemption, unfair assessment, or illegality," the court reasoned that if chapter 278 covered relators' claims, all of their other claims were precluded. Concluding that relators alleged illegal conduct resulting in unfair assessments, the court held that chapter 278 was relators' exclusive remedy, and that relators' claims therefore must comply with the procedural requirements of chapter 278.

The tax court concluded that claims based on the 2008 and 2009 tax years were untimely because chapter 278 petitions must be brought by April 30 of the year the challenged tax becomes payable. With respect to the 2010 claims, the court held that chapter 278 claims could be brought only by property owners on an individual basis. Because relators' 2010 claims "include[d] multiple petitioners and different properties," the court concluded that their amended complaint was "fatally deficient" and dismissed it.

■■■ On appeal, relators argue that chapter 278 does not provide the exclusive remedy for their claims and that, even if chapter 278 controls, their claims with respect to the 2010 assessments (taxes payable in 2011) survive a motion to dismiss. Our review of the final order of the tax court is limited. *Hutchinson Tech., Inc. v. Comm'r of Revenue*, 698 N.W.2d 1, 6 (Minn.2005). We determine only whether the tax court lacked jurisdiction, whether the tax court's order is supported by the evidence and is in conformity with the law, and whether the tax court committed any other error of law. Minn.Stat. § 271.10, subd. 1; *Jefferson v. Comm'r of Revenue*, 631 N.W.2d 391, 394 (Minn.2001). We review de novo the tax court's legal determinations. *Hutchinson Tech. Inc.*, 698 N.W.2d at 6. We overturn the tax court's factual findings only if they are "clearly erroneous." *200 Levee Drive Ass'n v. Cnty. of Scott*, 532 N.W.2d 574, 576 (Minn. 1995). With this standard of review in mind, we turn to relators' arguments.[4]

4. Relators also argue that the tax court should be reversed because it resolved fact issues and did not assume the truth of the facts as pleaded in their amended complaint. Specifically, relators claim that the court erred when it found that: "[w]hen [relators'] properties were taxed, the assessors determined the mar-

ket value by considering the value of nearby properties, but excluded those bank transactions they found to be forced sales." But the tax court did not find that bank sales are forced sales. Rather, the court found only that it was a "fact[ ] not in dispute" based on the respondents' explicit acceptance, for pur-

## I.

■ We turn first to relators' argument that the tax court erred in determining that their claims are covered by Minn.Stat. § 278.01. Section 278.01 provides that:

[a]ny person having ... any parcel of land, who claims that such property has been partially, unfairly, or unequally assessed in comparison with other property in the ... city ... or that the parcel has been assessed at a valuation greater than its real or actual value, or that the tax levied against the same is illegal, in whole or in part, or has been paid ... may have the validity of the claim, defense, or objection determined by the district court of the county in which the tax is levied or by the Tax Court....

Minn.Stat. § 278.01, subd. 1(a). We have consistently held that section 278.01 "provide[s] the exclusive means by which a taxpayer may" attack an unfair or unequal assessment in court. *Fichtner v. Schiller*, 271 Minn. 263, 267, 135 N.W.2d 877, 880 (1965) (quoting *State v. Elam*, 250 Minn. 274, 281, 84 N.W.2d 227, 231 (1957)); *see also, e.g., Evanson v. Comm'r of Taxation*, 280 Minn. 559, 561, 159 N.W.2d 259, 261 (1968) ("It is elementary that a taxpayer's remedies for relief on the basis that realty has been unfairly or unequally assessed are statutory.... [Minn.Stat. § 278.01] is [a] petitioner's exclusive remedy to contest unfair, unequal, or erroneous valuation."). We therefore evaluate relators' claims to see whether relators allege that their properties have been unfairly or unequally assessed.[5]

Relators' amended complaint includes claims based on alleged constitutional violations and non-constitutional claims. We first address relators' claims that are not premised on constitutional violations and then examine the constitutional claims.

## A.

The tax court held that relators' non-constitutional claims fell within the scope of Minn.Stat. § 278.01 because their claims were "related to the assessment process, which [c]hapter 278 was designed to address." We agree with the tax court that section 278.01 applies to relators' claims.

Relators argue that respondents' decision to exclude purchases from financial institutions results in higher assessments. Specifically, relators' amended complaint alleges that respondents' "tax scheme and methodology" results in "overvaluation and unfair assessment." Based on relators' own allegations, their claims clearly fall within section 278.01, which provides relief for those contending that their property "has been assessed at a valuation greater than its real or actual value." Minn.Stat. § 278.01, subd. 1(a).

Our construction of Minn.Stat. § 278.01 reinforces this conclusion. We have defined "assessment" broadly, and have consistently recognized that valuation is related to the tax assessment process. *In re Calhoun Beach Holding Co.*, 205 Minn. 582, 591, 287 N.W. 317, 322 (1939) ("To assess property is to fix its value for the purpose of taxation."); *see also Trask v. Skoog*, 138 Minn. 229, 231, 164 N.W. 914, 915 (1917); *Eide v. Clarke*, 57 Minn. 397, 401, 59 N.W. 484, 485 (1894); *cf. Prindle v. Campbell*, 9 Minn. 212 (Gil. 197), 214 (199) (1864) (stating that "[i]t may be laid down as a general rule that ... valuation [is] essential in taxing property"). In *Ficht-*

---

poses of their motion to dismiss, of the facts of the petition as true.

**5.** As explained below, the claims based on the 2008 and 2009 tax years, in contrast to the claims based on the 2010 tax year, are untimely. We therefore limit the discussion in this section to the 2008 and 2009 tax years.

*ner,* we stated that assessment "is the quasi-judicial act consisting of making a list of the taxpayer's property and fixing its valuation for appraisement and for tax purposes." 271 Minn. at 267, 135 N.W.2d at 880.

More recently, in *Programmed Land, Inc. v. O'Connor,* we concluded that the "express wording of section 278.01 supports a broad interpretation of its scope . . . [because] the terms used to describe the five categories—e.g. 'assessed' and 'illegal' tax—are broad in nature." 633 N.W.2d 517, 526 (Minn.2001). And we have also stated that the dual purposes of chapter 278—to benefit taxpayers by providing a quick and easy remedy and local governments by providing a prompt and reliable stream of revenue-support a broad interpretation of the statute. *See Elam,* 250 Minn. at 278, 84 N.W.2d at 230; *see also Programmed Land, Inc.,* 633 N.W.2d at 526 (stating that "[h]aving provided a means to challenge property taxes . . . the legislature would not then undermine that purpose by allowing a significant number of tax grievances to be free of the chapter 278 filing limitation and, consequently, actionable years after the taxes were due"). We also determined that claims that attack part of the "entire process that results in the determination of a property's taxable value" were assessment claims covered by section 278.01. *Programmed Land, Inc.,* 633 N.W.2d at 524.

Like the taxpayers in *Programmed Land,* relators are attacking the process by which respondents determined the tax value of relators' properties. Relators' claims therefore are assessment claims under our analysis in *Programmed Land,* and we hold that the tax court correctly

concluded that section 278.01 covers relators' claims.[6]

But relators argue, in essence, that we should not hold them to the remedies provided in chapter 278 because the broad scope of their claims makes chapter 278 inapplicable. And they argue that, because of the "one-year limitation on [chapter] 278 petitions, [there will be a] need for annual litigation" of their claims and that therefore chapter 278 should not apply. We disagree.

Chapter 278 has often been used to challenge even broad-based assessment practices. In *Bethke v. County of Brown,* for example, 134 taxpayers filed individual chapter 278 petitions challenging the City of New Ulm's assessment process. 301 Minn. 380, 382, 223 N.W.2d 757, 759 (1974). New Ulm was in the midst of a 4–year process to reassess all real property (approximately 6,000 parcels) in the city. *Id.* at 382–83, 223 N.W.2d at 759–60. Petitioners owned some of the first properties to be reassessed and, without exception, their properties had been assessed at higher values than in prior years. *Id.* Petitioners challenged New Ulm's overall policy of taxing petitioners' properties on the basis of new, higher values, before completing the entire 4–year reassessment process, claiming that it discriminated against them in violation of the federal and state constitutions. *Id.* Despite the citywide scope of petitioners' claims, we affirmed the tax court's determination that Minn.Stat. § 278.01 provided petitioners their exclusive remedy to challenge New Ulm's overall assessment plan. *Id.* at 385–86, 223 N.W.2d at 761 ("The trial court correctly found that the statutory proceedings under Minn. [Stat. § ] 278.01 are the exclusive

---

6. The tax court also determined that relators' claims are "illegality" claims, covered by Minn.Stat. § 278.01. Because we conclude that relators assert assessment claims, we need not, and do not, consider whether tax court erred in this alternative determination.

remedy of the taxpayer."); *see also Dulton Realty, Inc. v. State,* 270 Minn. 1, 21, 132 N.W.2d 394, 408 (1964) (discussing that taxpayers properly challenged Duluth's overall assessment scheme through chapter 278 petitions). Consistent with these cases, the allegedly broad scope of relators' claims is not relevant to a determination of whether those claims are covered by chapter 278.

Relators' repetition argument—that their claims cannot be covered by Minn. Stat. § 278.01 because the one-year limitation on actions brought under chapter 278 might require that they relitigate the same issue every year—likewise does not entitle relators to avoid application of the statute. The petitioners in *Bethke* made a somewhat analogous attempt to avoid the requirements of chapter 278. There, the petitioners succeeded on the merits and requested that we apply our determination that New Ulm's practice was unconstitutional to future tax years. 301 Minn. at 385–86, 223 N.W.2d at 761. We held that our determination could not apply to future years, concluding that chapter 278 petitions can challenge only taxes for one assessment year. *Id.* That chapter 278 requires that each year's taxes be challenged by a separate petition is similarly not a reason to avoid application of the statutory procedure in this case.

■ Finally, relators contend that chapter 278 does not bar their demands for declaratory and mandamus relief. Because relators' claims are covered by chapter 278, the tax court concluded that relators could not seek declaratory judgments or a writ of mandamus. The tax court did not err in this conclusion. We have consistently held that neither declaratory nor mandamus relief is available with respect to claims covered by chapter 278. *Land O'Lakes Dairy Co. v. Vill. of Sebeka,* 225 Minn. 540, 549, 31 N.W.2d 660, 665 (1948)

(holding that when a claim is covered by Minn.Stat. § 278.01 proceedings under the Declaratory Judgments Act (Minn.Stat. ch. 555) are "not available . . . as an alternative remedy"); *Evanson,* 280 Minn. at 560, 159 N.W.2d at 260 (stating that a "[p]etition for a Writ of Mandamus is pure folly" when a claim is covered by Minn.Stat. § 278.01). We reaffirm this clear precedent: when claims are covered by chapter 278, declaratory and mandamus relief is unavailable.

■ Based on relators' allegations and our analysis of the statutory language and our precedent, we hold that the tax court properly concluded that relators' claims are covered by Minn.Stat. § 278.01. As such, the tax court properly dismissed relators' non-constitutional claims based on the 2008 and 2009 assessments. Chapter 278 petitions have a strict time limit: they must be filed "on or before April 30 of the year in which the tax becomes payable," Minn.Stat. § 278.01, subd. 1(c), and can include only "one assessment date," *id.* § 278.02. Relators do not dispute that their claims based on the 2008 and 2009 assessments were filed after this deadline. We therefore hold that the tax court correctly determined that relators' claims with respect to the 2008 and 2009 assessments are time barred.

### B.

We turn next to consideration of relators' constitutional claims. Relators allege that respondents violated their federal and state rights to equal protection and violated the uniformity clause in the Minnesota Constitution, and they seek damages for these constitutional violations. The tax court dismissed relators' federal constitutional claims, holding that chapter 278 provided relators' exclusive remedy for such claims. The tax court also concluded, in the alternative, that all of relators' consti-

tutional claims (federal and state) failed on the merits because they were simply "conclusory allegations that [respondents] intentionally or arbitrarily valued their properties at a [higher] rate than other properties." We need not, and do not, decide whether chapter 278 precludes relators' constitutional claims because we conclude that these claims fail as a matter of law.

In their constitutional claims, relators argue to our court that by excluding bank sales from the assessment of market value, respondents injured relators, "plac[ing] a substantially disproportionate tax burden on [them] vis a vis another group of taxpayers." And because there are more bank sales in their neighborhoods than in other Minneapolis neighborhoods, relators contend that "the *same treatment* in other communities is so diluted that it does not distort the calculation of actual market value." (Emphasis added).

Respondents counter that relators have not alleged facts showing that they are treated differently than other Minneapolis property owners. According to respondents, if they have systematically excluded bank sales when assessing market value, then, "[i]n fact, the alleged method of systematic exclusion of a class of sales that potentially impacts all residential property owners is not ... differential ... treatment, it is evidence that all residential property owners, regardless of location, have been treated the same."

 Relators allege violation of their federal and state constitutional right to equal protection and of the uniformity clause in the Minnesota Constitution. Equal protection claims and claims for violation of the uniformity clause under the

Minnesota Constitution are analyzed using similar principles. *Schober v. Comm'r of Revenue*, 778 N.W.2d 289, 293 (Minn.2010) (stating that the federal equal protection clause and the Minnesota uniformity clause offer "identical" protection). There are two types of equal protection claims: "disparate treatment" and "disparate impact." *See Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). We therefore examine separately whether relators have stated a claim either for disparate treatment or disparate impact.

1.

 In order to state a disparate treatment equal protection or uniformity violation claim, the threshold question is whether the claimant is treated differently from others who are similarly situated, because the equal protection clause does not require the state to treat differently situated people the same.[7] *State v. Cox*, 798 N.W.2d 517, 521–22 (Minn.2011). As a result, we "routinely reject[ ] equal-protection claims when a party cannot establish that he or she is similarly situated to those whom they contend are being treated differently." *Id.* at 521. Relators allege that they "were treated differently [by respondents] in so far as their residential property was assessed at ratios higher than residential properties located in other communities." But the argument here is that respondents systematically excluded "bank sales" from the calculation of market value for property tax purposes in Minneapolis. Because there are more bank sales in relators' neighborhoods, relators argue that the exclusion affects them more. Relators do not make

---

7. Relators do not claim that any Minnesota tax statute violates the uniformity clause by discriminating between "the same class of subjects," Minn. Const. art. X, § 1, and, there-fore, we need not apply the three-part test from *Miller Brewing Co. v. State*, 284 N.W.2d 353, 356 (Minn.1979), to determine the constitutionality of such a statutory classification.

a disparate treatment argument; rather they argue that respondents treated all property owners the same in terms of the exclusion of bank sales. Supreme Court precedent is abundantly clear that discriminatory effects in the absence of disparate treatment do not normally give rise to an equal protection claim. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Because relators do not argue that they have been treated differently than other similarly situated persons (in fact they argue that they have been treated the same) they do not make a disparate treatment claim.

### 2.

 Relators also have not stated a disparate impact equal protection claim. To make out a claim for an equal protection violation based on disparate impact, a plaintiff must show (1) that a state action impacts his suspect class more than others and (2) that the state actor intended to discriminate against the suspect class. *See id.; Washington*, 426 U.S. at 239–40, 96 S.Ct. 2040. Relators do not allege either element.

First, relators have not alleged that they are members of a suspect class. They allege that they are "individuals who reside in the City of Minneapolis" whose properties have been assessed at a "higher ratio" than properties in other (presumably more affluent) neighborhoods where there are fewer bank sales. Assuming this allegation to be true, relators may be asserting that they have been discriminated against on the basis of their wealth or socioeconomic status. But wealth or socioeconomic status does not constitute a sus-

pect class, and therefore relators have failed to allege the first element of a disparate impact claim. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 23–24, 28, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1977). Second, relators fail to allege that respondents intentionally discriminated against them on the basis of any suspect class status. Because relators do not allege that they are members of a protected class or that respondents intended to discriminate against them by excluding bank sales, they have not stated a disparate impact claim.

Relators have not alleged a viable disparate treatment or disparate impact claim. We therefore hold that the tax court did not err when it dismissed relators' federal and state constitutional claims for failure to state a claim.

### II.

Relators' remaining claims allege violation of Minn.Stat. § 273.11 with respect to the 2010 assessments (taxes payable in 2011).[8] These claims were timely filed under chapter 278, but the tax court dismissed them, concluding that relators' amended complaint was "fatally deficient because it include[d] multiple petitioners and different properties." Relators argue that the tax court erred because the plain language of chapter 278, rules of statutory construction, and case law allow them to file a single chapter 278 action for multiple pieces of property owned by multiple petitioners as a class action. We disagree with the court's determination that multiple property owners may not file a single chapter 278 petition raising legal issues

---

**8.** The 2010 claims include constitutional claims and demands for declaratory judgment and mandamus. These claims are barred for the reasons discussed relative to the 2008 and 2009 assessments. Accordingly, what remains for decision is relators' contention that respondents violated Minn.Stat. § 273.11 during the 2010 assessment.

common to multiple pieces of property.[9]

██ Minnesota Statutes section 278.01 provides that "[a]ny person" having an interest in real property may bring a chapter 278 petition by "serving one copy of a petition" on the proper governmental agents. Minn.Stat. § 278.01, subd. 1(a). Although the petition "need not be in any particular form," it must satisfy several requirements. *Id.* § 278.02. It must "clearly identify ... the land involved, the assessment date, and ... the claim, defense, or objection asserted." *Id.* It may not challenge "more than one assessment date," though "several parcels of land in or upon which the petitioner has an estate, right, title, interest, or lien may be included in the same petition." *Id.* Finally, it must be filed "on or before April 30 of the year in which the tax becomes payable." *Id.* § 278.01, subd. 1(c). We interpret the filing requirements in the statute strictly. *Benigni v. Cnty. of Saint Louis,* 585 N.W.2d 51, 54 (Minn.1998) (affirming the tax court's dismissal of an untimely chapter 278 petition on jurisdictional grounds).

Relators argue that chapter 278 "permits multiple [named] petitioners to file one petition." According to relators, because the rules of statutory construction dictate that the "singular includes the plural," the phrase "any person" in Minn.Stat. § 278.01 is congruous with "any person[s]," allowing multiple petitioners to file one petition. Further, relators note that Minn.Stat. § 278.02 expressly allows for the filing of a petition concerning multiple parcels of land.

Respondents argue that the singular language used in Minn.Stat. §§ 278.01 and .02 clearly "precludes multiple, unrelated properties, with separate owners being included in a single petition." They argue that the Legislature's decision to allow a single petitioner to include multiple properties in a single petition does not support relators' argument and, to the contrary, supports the argument that the Legislature considered the "multiple properties" issue and limited petitions with multiple properties to those brought by one individual.

██ The Legislature has directed that when construing a statute, we are to interpret a singular word, such as "person," to include the plural "persons." Minn.Stat. § 645.08(2) (2012); *Bryant v. Gustafson,* 230 Minn. 1, 7, 40 N.W.2d 427, 432 (1950)

9. Respondent City moved to dismiss relators' amended class action complaint based on lack of subject matter jurisdiction and a failure to state a claim upon which relief could be granted. Minn. R. Civ. P. 12.02(a), (e). Although the City argued in its motion that class treatment was "without merit," it conceded that a decision on class certification was "not ripe." Thus, no question of class certification was before the tax court. *See* Minn. R. Civ. P. 23.03(a)(1) (stating that "the court must ... determine by order whether to certify the action as a class action"). We therefore do not decide whether a class action can be used to challenge an alleged statutory assessment violation. Nevertheless, while we remand for further proceedings, and while we recognize that a class certification decision rests in the court's discretion, *see Gordon v. Microsoft Corp.,* 645 N.W.2d 393, 402 (Minn. 2002) (stating that appellate review of a class certification decision "should take into consideration the district court's discretion"), we have yet to uphold a class certification decision challenged on appeal in property value disputes. *See Ario v. Metro. Airports Comm'n,* 367 N.W.2d 509, 513–16 (Minn.1985) (holding that proposed class action for inverse condemnation claims met the requirements of Rule 23.01, but not Rule 23.02(3)); *see also In re Objections & Defs. to Real Prop. Taxes,* 335 N.W.2d 717, 719–20 (Minn.1983) (affirming trial court order denying class certification in action to compel assessor to reclassify unimproved real property); *Alevizos v. Metro. Airports Comm'n,* 298 Minn. 471, 498, 216 N.W.2d 651, 668 (1974) (affirming trial court's denial of class certification in inverse condemnation case).

(holding that a statute authorizing the dedication of land to "any person" authorized "a dedication to any number of persons, in that the singular includes the plural"). This rule applies even when the statute is unambiguous. *See Laase v. 2007 Chevrolet Tahoe,* 776 N.W.2d 431, 435 (Minn.2009) (citing *Cnty. of Washington v. Am. Fed'n of State, Cnty. & Mun. Emps,* 262 N.W.2d 163, 168 (Minn.1978) (utilizing the singular-includes-plural canon to interpret the phrase "a supervisory employee" to include all supervisory employees without discussing whether the statute was ambiguous)). And we must apply this default rule unless it "would involve a construction inconsistent with the manifest intent of the legislature, or repugnant to the context of the statute." *Laase,* 776 N.W.2d at 435.

## A.

■ We first consider whether applying the singular-includes-the-plural canon would be inconsistent with the Legislature's manifest intent. The Legislature's intent in passing chapter 278 was to benefit both taxpayers and local governments. *Programmed Land, Inc.,* 633 N.W.2d at 525–526 (citing *Elam,* 250 Minn. at 278, 84 N.W.2d at 230). Chapter 278 benefits taxpayers because it provides "a means to object to property taxes without first having to default and then answer in delinquent tax proceedings." *Id.* at 525. It benefits local governments because, "by providing a cause of action without having to default, chapter 278 limit[s] or prevent[s] tax delinquency and enforce[s] the prompt collection of taxes, ensuring a reliable stream of revenue." *Id.* at 525–26.

Applying the singular-includes-the-plural canon to Minn.Stat. § 278.01 is not inconsistent with the Legislature's intent. Applying the canon does not negatively affect the taxpayer's right to bring a tax challenge prior to delinquency and does not hinder local governments' interest in the prompt collection of taxes. If anything, it furthers the Legislature's intent by allowing several taxpayers with the same legal argument to have that argument considered in one petition, potentially saving both private and public resources.

Respondents argue, however, that allowing multiple petitioners with the same legal claim to bring a single petition "would unduly burden the Tax Court." We are not persuaded by this argument, especially given that Minnesota courts have often consolidated individual chapter 278 petitions raising common legal questions. *See Programmed Land, Inc.,* 633 N.W.2d at 521; *Bethke,* 301 Minn. at 382, 223 N.W.2d at 759 (severing and consolidating the common legal issue in 134 individual chapter 278 petitions); *Renneke v. Brown Cnty.,* 255 Minn. 244, 244, 97 N.W.2d 377, 378 (1959); *Vill. of Aurora v. Comm'r of Taxation,* 217 Minn. 64, 67, 14 N.W.2d 292, 296 (1944). Here, the seven named relators make identical legal arguments, and the tax court could have consolidated their claims had they been brought separately.

The tax court also has the ability and duty to efficiently manage its cases under Minn. R. Civ. P. 16. *See* Minn.Stat. § 271.06, subd. 7 (2012) (noting that the rules of civil procedure apply in the tax court). Under this rule, the tax court, if it deems it necessary, may adopt special procedures for addressing a petition brought by multiple property owners under chapter 278, including ordering consolidation or separation of claims for trial pursuant to Minn. R. Civ. P. 42. *See also* Minn. R. Civ. P. 16.03(m), (p). The tax court may also use the joinder rules to manage these multiple party cases. *See* Minn. R. Civ. P. 20.01 ("All persons may join in one action as plaintiffs *if* they assert any right to relief, jointly, severally, or in the alternative with respect to or arising out of the

same transaction, occurrence, or series of transactions or occurrences *and if* any question of fact or law common to all these persons will arise in the action." (emphasis added)); Minn. R. Civ. P. 21 ("Parties may be dropped or added by order of the court on motion of any party or upon the court's own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.").

The dissent contends that this result is inconsistent with the broad purpose of Minn.Stat. § 278.01. We disagree. The dissent's construction fails to accommodate the Legislature's dual purpose of benefiting taxpayers and local governments in property tax matters. *See Programmed Land, Inc.,* 633 N.W.2d at 525–26. As noted above, our construction of section 278.01 is consistent with this legislative purpose. The dissent finds fault with our examination of the legislative purpose behind Minn.Stat. § 278.01, contending that we cannot examine the "spirit" or "purpose" of the statute when applying textual canons such as the singular includes the plural. But the plain language in Minn. Stat. § 645.08 directs us to apply this canon unless its application is "inconsistent with the manifest intent of the [L]egislature." Our analysis does no more than confirm consistency between the legislative purpose for chapter 278 proceedings and the construction reached through applying the singular-includes-the-plural canon.[10]

We also disagree with the dissent's contention that a conflict exists between Minn. Stat. § 278.01 and Minn. R. Civ. P. 20.01 that precludes the use of our court rules. *See* Minn. R. Civ. P. 81.01(a) (stating the "rules do not govern pleadings, practice and procedure in" certain statutory proceedings, including chapter 278, "insofar as they are inconsistent or in conflict with the rules"). The legislative intent expressed in Minn.Stat. § 271.06, subd. 7 could is clear: with the exception of certain statutory disclosure requirements that are not at issue in this case, the rules of civil procedure "shall govern the procedures in the Tax Court, where practicable." *See* Minn.Stat. § 271.06, subd. 7 (stating rules shall apply "[e]xcept as provided in section 278.05, subdivision 6"). We are confident that the tax court will apply the standards of permissive joinder in Rule 20.01, along with tools for "adopting special procedures for managing potentially difficult or protracted actions that may involve ... multiple parties," Minn. R. Civ. P. 16.03(*l*), to fulfill the legislative objectives of benefiting taxpayers and local governments in property tax matters, thus avoiding any conflict between the rules and those objectives.

■■■■■ We stress, however, that the ability of multiple taxpayers to file a single chapter 278 action does not free taxpayers to file a single petition raising unrelated issues. But where, as in this case, relators raise the identical legal argument and in light of the tools the tax court has to

---

10. The decision in *Regency Condo. Ass'n v. Cnty. of Ramsey,* No. TA–1095, 1986 WL 9427 (Minn. T.C. July 2, 1986), *rev'd on other grounds, see In re Objections & Defs. to Real Prop. Taxes,* 410 N.W.2d 321 (Minn.1987), supports our construction of section 278.01. While the standing of the property owner in that case—a condominium association—may have fallen more clearly within the plain terms of section 278.02, *see In re Objections & Defs. to Real Prop. Taxes,* 410 N.W.2d at 323 (stating that "the association, as the holder of a lien on each parcel" could "include in its one petition all parcels on which it has a lien"), we also noted there that "justice, as well as judicial economy, is served by determining objections to the taxation of the entire condominium in one proceeding," *id.* at 324. The same concerns for efficient use of judicial resources, consistent with the rules of civil procedure, are relevant here.

efficiently manage its cases, we conclude that relators' reading of the statute—which applies the singular-includes-the-plural canon to Minn.Stat. § 278.01—is not manifestly contrary to the Legislature's intent.

### B.

We next must consider whether applying the singular-includes-plural canon would be repugnant to the context of the statute. Repugnancy "is a strong term and presents a high hurdle for a party claiming that a construction is repugnant to the context of a statute." *Laase,* 776 N.W.2d at 437 (quoting *Baker v. Shields,* 767 N.W.2d 404, 409 (Iowa 2009)). "[T]he repugnancy exception is not met simply because the judiciary disagrees with the result reached by application of the canon." *Id.* Rather, in order "for something to be repugnant, it must be inconsistent, irreconcilable or in disagreement with the other language of a statute." *Id.* (citation omitted) (internal quotation marks omitted).

Respondents argue that the consistent use of the singular form throughout Minn. Stat. §§ 278.01 and .02 means that the Legislature intended to allow only "a single property owner filing a single petition for his or her multiple properties." According to respondents, then, applying the singular-includes-the-plural canon would be repugnant to the context of the statute. Respondents rely specifically on Minn.Stat. § 278.02, which provides that "several parcels of land in or upon which *the petitioner* has an estate, right, title, interest, or lien may be included in the same petition." (Emphasis added). Here, the Legislature used the singular form—petitioner—when referring to the plural—several parcels—in the same sentence. Respondents argue that section 278.02 confirms that the Legislature contemplat-

ed the question of multiple properties and decided that only a single petitioner may bring a petition including multiple properties. Based on this interpretation, respondents assert it is repugnant to apply the singular-includes-the-plural canon in the circumstances of this case, where there are multiple petitioners.

But the repugnancy standard is necessarily a high one. *Laase,* 776 N.W.2d at 437. That the Legislature specifically provided that a property owner may include all of her properties in a single petition is not inconsistent with the conclusion that one property owner may join with other property owners in bringing a tax petition that raises the identical legal argument. *Id.* at 438 (noting that the repugnancy standard is met if application of the plural creates "an inconsistency or irreconcilable conflict" with another provision in the statute). Because application of the singular-includes-the-plural canon is not clearly repugnant to the context of chapter 278, respondents have not met their burden of proving that Minn.Stat. § 645.08(2) does not apply.

Based on the Legislature's directive that the singular-includes-the-plural, we conclude that the seven named relators properly filed their 2010 chapter 278 claims in one action. We therefore hold that the tax court erred in dismissing the amended complaint of the seven named relators to the extent it alleges violation of Minn.Stat. § 273.11 for the 2010 tax year.

### III.

In summary, we affirm the tax court's dismissal of relators' federal and state constitutional claims, demands for declaratory judgment and mandamus, and claims based on the 2008 and 2009 assessments. But we reverse the tax court's dismissal of the seven named relators' action based on the 2010 assessments to the extent rela-

tors raise claims for violation of Minn.Stat. § 273.11.

Affirmed in part, reversed in part, and remanded.

Took no part, WRIGHT, J.

WRIGHT, J., not having been a member of the court at the time of submission, took no part in the consideration or decision of this case.

DIETZEN, Justice (dissenting).

I respectfully dissent. I agree with the majority that the tax court properly dismissed relators' claims based on the 2008 and 2009 assessments as untimely, and that relators' federal and state constitutional claims fail as a matter of law. But I disagree with the majority that the tax court erred in dismissing the 2010 tax assessment. Specifically, I reject the majority's interpretation of Minn.Stat. § 278.01 (2012) that allows multiple petitioners to challenge the tax assessments of multiple unrelated parcels of land in a single petition. In my view, the majority misapplies the relevant canons of statutory construction, and as a result, its interpretation is contrary not only to the plain language of the statute, but also to the clear intent of the Legislature.

To explain my dissent, I will first express my interpretation of section 278.01 and then respond to the majority's proposed interpretation.

## I.

Our goal when interpreting a statute "is to ascertain and effectuate the intention of the [L]egislature." Minn.Stat. § 645.16 (2012); *Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 649 (Minn.2012). To accomplish that, we always begin by determining whether the statutory language is clear.

*Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72 (Minn.2012). The language lacks clarity or bears ambiguity when it is susceptible to more than one reasonable interpretation. *Id.* at 72–73. If the statute is unambiguous, we enforce its plain and ordinary meaning. Minn.Stat. § 645.08(1) (2012); *Emerson v. Sch. Bd. of Indep. Sch. Dist. 199*, 809 N.W.2d 679, 682 (Minn. 2012). Only if the statute is ambiguous do we then look beyond its language to ascertain legislative intent. *Staab*, 813 N.W.2d at 73.

Minnesota Statutes § 278.01 provides the exclusive remedy by which an individual taxpayer may challenge the assessment value of, and consequently the taxes assessed on, any piece of property or parcel of land the taxpayer owns. *Programmed Land, Inc. v. O'Connor*, 633 N.W.2d 517, 523 (Minn.2001). It states, in relevant part:

> Any person having personal property, or any estate, right, title, or interest in or lien upon any parcel of land ... may have the validity of [a tax assessment] claim, defense, or objection determined ... by serving one copy of a petition for such determination....

Minn.Stat. § 278.01, subd. 1(a). The most natural reading of section 278.01 is that one petitioner may file a petition challenging the tax assessment with respect to one parcel of land. Two reasons support my interpretation.

First, the text of section 278.01 uses the singular "person" and "petition": "any person" may file "a petition" challenging the property taxes assessed against any parcel of land the taxpayer either owns or has an interest. Because the statute does not employ the plural of "person" or "petition," it logically follows that multiple petitioners may not join together to file a single petition with respect to multiple, unrelated parcels of land.

Second, section 278.01, when read in conjunction with section 278.02, contemplates that only a single petitioner may file a petition. While statutory interpretation focuses on specific language, the canons of statutory construction often require that we put the statute in context, regardless of whether it is ambiguous. *Am. Family Ins. Grp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000). "[W]e do not examine different provisions in isolation." *Schmidt ex rel. P.M.S. v. Coons,* 818 N.W.2d 523, 527 (Minn.2012) (internal quotation marks omitted). Instead, we examine "a statute as a whole" and "interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Schroedl,* 616 N.W.2d at 277. So is the case here.

The meaning of section 278.01 is clear when read in light of section 278.02. The latter provision specifically articulates what a petition filed by a property owner challenging a property tax assessment may include. It states, in relevant part:

> Several items of personal property and several parcels of land in or upon which the petitioner has an estate, right, title, interest, or lien may be included in the same petition. . . .

Minn.Stat. § 278.02 (2012). Here, the Legislature does not change the singular "petitioner" in section 278.01 to the plural; but it does alter the singular "parcel of land" in section 278.01 to the plural. In doing so, the Legislature extended the general provision in section 278.01 to allow one petitioner to file a single petition for multiple parcels of property. Consequently, section 278.02 clarifies section 278.01, permitting the petitioner to include in one petition "several parcels of land" upon which it had an interest.

Significantly, the text of section 278.02 did not extend the singular "petitioner" in section 278.01 to allow more than one petitioner to join together to challenge the tax assessment for multiple, unrelated parcels of land. Section 278.02 retains the singular form of "the petitioner." Because the text of section 278.02 explicitly provides that a petitioner may include multiple parcels of land in one petition, but it does not explicitly provide that multiple petitioners may join together in one petition, it logically follows that the Legislature did not intend to allow multiple petitioners to join in one petition. When read together, sections 278.01 and 278.02 demonstrate that the Legislature elected not to extend 278.01 to multiple petitioners. Had the Legislature intended to create an additional exception for the number of petitioners allowed in one petition—either in section 278.01 or 278.02—it could have. It did not. And we should not read into the statute language that the Legislature has omitted, either purposely or inadvertently. *Rohmiller v. Hart,* 811 N.W.2d 585, 590–91 (Minn.2012).[1]

## II.

By contrast, the majority relies exclusively on Minn.Stat. § 645.08 (2012) to

---

1. My interpretation is also reinforced by the Minnesota Tax Court's consistent application of section 278.01. In 1986, the tax court held: "Chapter 278 does not allow petitions to be brought by more than one taxpayer unless they share an interest in an individual parcel." *Regency Condo. Ass'n v. Cnty. of Ramsey,* No. TA–1095, 1986 WL 9427, at *1 (Minn. T.C. July 2, 1986), *rev'd on other grounds, In re Objections & Defs. to Real Property Taxes,* 410 N.W.2d 321 (Minn.1987) (concluding that a condominium association, which holds a lien on each parcel of property within the condominium, could bring one petition under section 278.01, and pursuant to section 278.02 could include in its one petition all parcels in which it had a lien). Accordingly, the tax court denied a condominium association, composed of the owners of 94 of the condominium units, the ability to bring a single petition on behalf of all the owners individually. *Id.*

support its proposed interpretation. Section 645.08 provides: "[T]he following canons of interpretation are to govern, unless their observance would involve a construction inconsistent with the manifest intent of the legislature, or repugnant to the context of the statute ... (2) the singular includes the plural; and the plural, the singular...." Notably, this canon governs "unless [its] observance would involve a construction inconsistent with the manifest intent of the legislature." *See Laase v. 2007 Chevrolet Tahoe,* 776 N.W.2d 431, 435 (Minn.2009). It is the majority's proposed interpretation that runs afoul of the Legislature's intent, and does so for several reasons.

For one, the majority ignores section 278.02. As previously discussed, we must examine surrounding sections of the statute in question to determine legislative intent. *See In re S.M.,* 812 N.W.2d 826, 830 (Minn.2012) (reading Minn.Stat. §§ 256G.04 and 256G.10 (2012) together to define "county"); *Mavco, Inc. v. Eggink,* 739 N.W.2d 148, 153–54 (Minn.2007) (construing Minn.Stat. §§ 514.12 and 514.11 (2012) together to define "person"). Here, section 278.02 is not only relevant, but dispositive of the Legislature's intent. Specifically, the Legislature extended and clarified the meaning of section 278.01 in section 278.02 to allow a petitioner to bring a petition challenging the tax assessments upon multiple parcels of land upon which the petitioner has an interest. The common denominator is that the multiple parcels of land be owned by one petitioner. But the Legislature did not extend and clarify "petition" in section 278.02 to include the plural. Instead, the Legislature clarified that "petitioner" is singular. Moreover, the majority's interpretation would create a conflict between the singular "parcel of land" in section 278.01 and the plural "parcels of land" in section 278.02. *See* Minn.Stat. § 645.17(1)–(2)

(2012) (presuming that the Legislature intends the entire statute to be effective and does not intend a result that is unreasonable). If section 278.01 is interpreted to include the plural, "parcel of land" in section 278.01 would already include the plural "parcels of land."

Further, the majority relies on *Programmed Land* to argue that the purpose of section 278.01 is to simultaneously benefit the taxpayer by providing a means to object to property taxes without first having to default and then answer in delinquent tax proceedings, and to benefit the state by enforcing the prompt collection of taxes. 633 N.W.2d at 525–26. According to the majority, its proposed interpretation achieves this purpose. I disagree with the majority's analysis for three reasons.

First, *Programmed Land* does not address the question of whether multiple petitioners may file a petition for multiple parcels of land and therefore is inapposite. Moreover, my interpretation satisfies the broad purposes of the statute expressed in *Programmed Land.* Specifically, my interpretation benefits the taxpayer because he is "provided a means to object to property taxes without first having to default and then answer in delinquent tax proceedings," and my interpretation benefits the state because it is provided with a system that enforces "prompt collection of taxes, ensuring a reliable stream of revenue" without first requiring the taxpayer to default. *Id.* at 525–26.

Second, and more importantly, we do not examine the spirit of the statute to construe its meaning unless the statute is ambiguous. *See* Minn.Stat. § 645.16; *In re Individual 35W Bridge Litig.,* 806 N.W.2d 820, 827 (Minn.2011), *cert. denied sub nom., Jacobs Eng'g Grp., Inc. v. Minnesota,* —— U.S. ——, 132 S.Ct. 2682, 183 L.Ed.2d 45 (2012). We utilize textual

canons—such as the single includes the plural—to interpret the text of a statute; and we employ extrinsic canons—such as the object to be attained or legislative history—to construe an ambiguous statute. *See* Minn.Stat. §§ 645.08, 645.16; *Laase,* 776 N.W.2d at 435 n. 2 ("In the absence of a finding of ambiguity, we do not resort to legislative history to interpret a statute."). The majority correctly observes that in applying the singular-includes-the-plural textual canon, the court interprets the text of a statute. Minn.Stat. § 645.08. But then it goes too far in reasoning that the court should use the singular-includes-the-plural textual canon to explore the spirit of the statute. Because the statute is not ambiguous, the canons of construction do not permit the court to explore the legislative purpose behind the statute. Instead, the court must ground its interpretation in the text of section 278.01, and the text of surrounding sections, including section 278.02. Consequently, the majority's reasoning is flawed.

Third, the majority's reliance on section 271.06, subdivision 7, to argue that the joinder provisions of Minn. R. Civ. P. 20.01 are applicable and independently support its interpretation lacks merit. Specifically, chapter 278—including section 278.01—is expressly exempted from the Rules of Civil Procedure. Minn. R. Civ. P. 81.01 (concluding that the rules of civil procedure do not govern the statutory proceedings in chapter 278 if those proceedings are inconsistent or in conflict with the rules). Consequently, the applicability of Rule 20.01 depends on whether Rule 20.01 is consistent with and does not conflict with section 278.01. Because the interpretation of section 278.01 is disputed, it cannot be concluded that section 278.01 is not in conflict with Rule 20.01. The majority's argument therefore lacks merit.

## III.

In summary, I conclude that the plain language of section 278.01, as clarified by section 278.02, provides that a single petitioner may file a tax petition for one parcel of property to challenge the tax assessment for that property. The majority's interpretation of section 278.01 is contrary to the plain meaning of section 278.01, inconsistent with section 278.02, and fails to follow well-established textual canons of statutory construction. Thus, I respectfully dissent.

STRAS, Justice (dissenting).

I join in the dissent of Justice Dietzen.