*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0985**

In the Matter of the Revocation of the
Family Child Care License of Jennifer Ball

**Filed July 5, 2016**
**Affirmed**
**Smith, Tracy M., Judge**

Minnesota Department of Human Services
File No. 130-1800-31102

Jennifer Ball, Duluth, Minnesota (pro se relator)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark C. Rubin, St. Louis County Attorney, Joseph M. Fischer, Assistant County Attorney, Duluth, Minnesota (for respondent commissioner of human services)

Considered and decided by Hooten, Presiding Judge; Worke, Judge; and Smith, Tracy M., Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH, TRACY M.**, Judge

Relator Jennifer Ball challenges a decision by respondent commissioner of the Minnesota Department of Human Services (the commissioner) to revoke her family childcare license, arguing that (1) her due-process rights were violated, (2) her equal-protection rights were violated, (3) there was no evidence to support a finding that she did

not grant licensors access to the daycare, and (4) there were no grounds for revoking her license. We affirm.

## FACTS

In 2008, Ball received a family childcare license that allowed her to operate a daycare out of her residence. Beginning shortly after she was licensed, on several occasions in 2008 and 2009, Ball failed or refused to grant St. Louis County licensors access to the daycare. These violations led to the temporary immediate suspension and ultimate revocation of her license in 2009. In 2010, the Department of Human Services (DHS) lifted the temporary immediate suspension, rescinded the revocation, and granted Ball a two-year conditional license. One of the terms of Ball's conditional license was to follow all applicable Minnesota rules and laws. After Ball requested reconsideration of the conditional license, the commissioner affirmed that the cited violations warranted conditional status for two years. Ball appealed the conditional license to this court, but the appeal was dismissed because she failed to timely serve the issued certiorari writ on the commissioner.

From September 2010 through June 2012, Ball was issued five correction orders for the following violations: (1) disclosing private data regarding children in her daycare; (2) having a number of electrical and extension cords in the main play area; (3) utilizing a substitute care provider without documentation that the substitute had completed required training; (4) having inoperable smoke detectors; (5) having clutter within a foot of the furnace; and (6) failing to provide documentation that fire drills were performed.

2

In February 2013, the county received a complaint from the mother of two children who attended Ball's daycare from November 2012 through January 2013. The mother complained that, while in Ball's care, the children were denied bathroom facilities and, during the winter months, were left outside in a car that was not running for up to an hour at a time. The mother also complained that Ball did not have activities for the children, that Ball threatened to tell their mother they were liars if the children complained to her, that the childcare area was cold, and that the drinking water was always warm or hot. The county interviewed the children, who reiterated the complaints that their mother had reported. The children also reported that they were left alone and unattended for significant amounts of time while Ball watched them through a video monitor located upstairs from the childcare area and that Ball would only interact with them when she brought food down to them from the upstairs kitchen.

At 6:00 a.m. on February 13, 2013, two licensors made an unannounced visit to Ball's daycare to investigate the complaint. The licensors testified at the contested case hearing that they chose to arrive at 6:00 a.m. because they believed that a child would be leaving the daycare at that time and because Ball advertised "24/7" daycare. When the licensors arrived, they saw Ball's mother, who resided with Ball and also helped care for the children, driving children away from the daycare. The licensors knocked on the door of Ball's home several times, with no response. When they saw Ball looking out of a window of the house, the licensors waved at her, and they believed that Ball saw and recognized them. The licensors again knocked on the door, but Ball did not answer. After about 20 minutes, the licensors left.

3

The licensors recommended that a temporary immediate suspension order be issued because they had been denied access to investigate the complaints and to ensure that the daycare was being operated in a manner that protected the health, safety, and rights of the children attending Ball's daycare. On February 14, the commissioner issued an order of temporary immediate suspension of Ball's license. On February 15, the licensors returned to the daycare for a scheduled visit with Ball. During that visit, they observed that the faucets in the childcare-area bathroom were reversed from the standard installation, with hot water on the right and cold water on the left. Ball admitted to putting a space heater in the childcare area when the weather was cold. The licensors were denied access to the upstairs kitchen and were only allowed to view from a distance the video monitor that Ball used to remotely monitor the children.

After the visit, Ball was issued a correction order for the following violations: (1) having the hot and cold handles in the bathroom reversed and not making herself available to assist the children in accessing cool drinking water; (2) not offering adequate snacks after school and, on occasion, serving food that was undercooked and cold; (3) preventing licensors from seeing the food-preparation area to determine how the food was prepared, stored, and heated; (4) preventing licensors from seeing the appliances where food was prepared to assess sanitation and safety; (5) denying licensors access to parts of the residence to determine compliance with licensing standards; (6) offering conflicting statements and misleading information during the course of the investigation; (7) limiting school-age activities to watching movies and television, limiting outdoor activities, and not providing planned or creative activities; (8) lack of proper supervision

4

of children and leaving daycare children unattended on the lower level of the home while she was on the upper level; (9) using a space heater in the childcare area while children were present and unsupervised; (10) failing to have an operational toilet for daycare children to use; (11) threatening children that she would tell their mother they were liars if they complained to their mother; and (12) denying licensors access to the kitchen area of the family home. Although the orders required deadlines by which the corrections were to occur, there is nothing in the record suggesting that any evidence of corrective action was presented. After Ball requested reconsideration of the correction order, the commissioner affirmed all of the above violations but one. The space-heater violation was not affirmed because there was nothing in the license that specifically addressed this issue.

Ball appealed the order of temporary immediate suspension, and a contested case hearing was held. The administrative-law judge (ALJ) recommended that the temporary immediate suspension order be affirmed. The commissioner subsequently issued a final order affirming the temporary immediate suspension of Ball's license.

On August 30, 2013, the commissioner issued an order revoking Ball's license. Ball appealed this order, and a contested case hearing was held. The ALJ recommended that the order of revocation be affirmed. The commissioner subsequently issued a final order affirming the revocation of Ball's license.

Ball appeals this order by certiorari.

## DECISION

Administrative-agency decisions are presumed to be correct and "may be reversed only when they are arbitrary and capricious, exceed the agency's jurisdiction or statutory authority, are made upon unlawful procedure, reflect an error of law, or are unsupported by substantial evidence in view of the entire record." *In re Revocation of the Family Child Care License of Burke*, 666 N.W.2d 724, 726 (Minn. App. 2003); *see* Minn. Stat. § 14.69 (2014) (also providing for reversal or modification if decision is in violation of constitutional provisions). "This court must defer to the agency's fact-finding process and be careful not to substitute its findings for those of the agency." *Burke*, 666 N.W.2d at 726. We will not retry facts or make credibility determinations. *In re Appeal of Rocheleau*, 686 N.W.2d 882, 891 (Minn. App. 2004), *review denied* (Minn. Dec. 22, 2004); *see also Vargas v. Nw. Area Found.*, 673 N.W.2d 200, 205 (Minn. App. 2004) (stating that, when reviewing an agency's decision, "appellate courts must defer to the commissioner's ability to weigh conflicting evidence"), *review denied* (Minn. Mar. 30, 2004). This court is not bound by the agency's ruling on a matter of law. *Burke*, 666 N.W.2d at 726. We review an agency's choice of sanction for an abuse of discretion. *Id.*

## I.

Ball first argues that her due-process rights were violated in 2009 when her license was suspended because the 2009 temporary immediate suspension order was not properly served on her and she was not given the opportunity to be heard or present evidence. Because this argument is not relevant to Ball's current appeal, we decline to address it. Ball is appealing the commissioner's 2015 final order of revocation, but her argument

6

relates to the commissioner's 2009 order of temporary immediate suspension. In the current proceeding, neither the ALJ nor the commissioner addressed her due-process argument, and no evidence was submitted to support it at the contested case hearing. Further, we note that Ball had the opportunity to make her due-process argument regarding the 2009 violation to this court, but her appeal was dismissed because she failed to timely serve the issued certiorari writ on the commissioner.

## II.

Ball next argues that she "was not treated the same as others in the same situation." The Equal Protection Clauses of the United States and Minnesota Constitutions require that similarly situated individuals be treated alike. *State v. Richmond*, 730 N.W.2d 62, 71 (Minn. App. 2007), *review denied* (Minn. June 19, 2007). A threshold question to a disparate-treatment equal-protection claim is whether a "claimant [was] treated differently from others who are similarly situated, because the equal protection clause does not require the state to treat differently situated people the same." *Odunlade v. City of Minneapolis*, 823 N.W.2d 638, 647 (Minn. 2012). Appellate courts "routinely reject equal-protection claims when a party cannot establish that he or she is similarly situated to those whom they contend are being treated differently." *Id.* (quotation omitted).

Ball submitted evidence showing how the county interacted with other providers, but she failed to demonstrate how those providers are similarly situated to her. Specifically, she did not show that the other providers had similar extensive histories of violations, including repeatedly failing or refusing to allow licensors access to their

7

daycares, or that these providers were ever placed on a conditional license. Therefore, we reject Ball's equal-protection claim.

## III.

Ball next argues that there is no evidence that she denied licensors access to her daycare in 2008-09 or in 2013. Because, as discussed earlier, the 2008-09 violations are not at issue in this appeal, we decline to address that portion of Ball's argument and address only the portion relating to the 2013 violation.

We conclude that there is substantial evidence in the record to support a finding that Ball denied licensors access to her daycare in 2013. The two licensors who visited Ball's daycare on February 13, 2013, testified at the contested case hearing that they felt that they were denied access to Ball's daycare that day. They testified that they knocked on Ball's door several times, with no answer; that when they saw Ball looking out of a window of the house, they waved at her and believed she saw and recognized them; but that when they again knocked on the door there was no answer. Further, the licensors testified that, although Ball's mother came running after them as they were leaving stating that they could "come back now," they still felt as if they were denied access because by that point they had already been outside the house for at least 20 minutes and Ball's mother is not the license holder. The licensors' case notes detailing their February 13, 2013 visit were also admitted into evidence at the contested case hearing and provided a similar depiction of events.

We acknowledge that Ball's mother provided contrary testimony at the contested case hearing. For example, she testified that on the morning of February 13, 2013, Ball

8

told her over the phone that she was scared because she thought someone was trying to break into her house. She also testified that there is no lighting outside of the house and "no way" to see who is knocking at the door. Notwithstanding this testimony, the ALJ found that Ball failed to allow access to the licensors, and the commissioner adopted that finding. The finding has evidentiary support and is entitled to deference. *See In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 278 (Minn. 2001) (noting that appellate courts "defer to an agency's conclusions regarding conflicts in testimony").

## IV.

Finally, Ball argues that there were no grounds for revoking her license. The commissioner may sanction license holders who do not comply with applicable law or rule. Minn. Stat. § 245A.07, subd. 1(a) (2014). When applying sanctions, the commissioner must "consider the nature, chronicity, or severity of the violation of law or rule and the effect of the violation on the health, safety or rights of the persons served by the program." *Id.* The law specifically provides that failure to permit access to licensors investigating alleged violations "is reasonable cause for the commissioner to . . . revoke the license." Minn. Stat. § 245A.04, subd. 5 (2014).

We conclude that the commissioner did not abuse her discretion by revoking Ball's license. The commissioner properly considered Ball's chronic history of violations and the effect of those violations—which involved inadequate restroom facilities, lack of food safety, and improper supervision of the children, among other things—on the health, safety, and rights of the children. In addition, the commissioner properly determined,

9

based on a sufficient record, that Ball denied licensors access to her daycare on February 13, 2013, when they came to investigate complaints, and that the denial of access itself was grounds for revocation.

**Affirmed.**