In the Matter of the REVOCATION
OF THE FAMILY CHILD CARE
LICENSE OF GAIL BURKE.

No. C4–02–1886.

Court of Appeals of Minnesota.

Aug. 5, 2003.

Jeffrey M. Johnson, Schurhammer & Johnson, Faribault, MN, for relator.

Jenel Kristen Wavra, Faribault, MN, for respondent Rice County.

Considered and decided by TOUSSAINT, Chief Judge, STONEBURNER, Judge, and MINGE, Judge.

## OPINION

MINGE, Judge.

In this certiorari appeal from the commissioner's order revoking relator's child daycare license for failure to supervise and for violating licensing rules, relator argues

that the Commissioner of Human Services abused her discretion. Because the evidence in the record does not support the sanction of revocation, we reverse and remand.

## FACTS

In April 1998, relator Gail Burke began operating a child daycare facility licensed by the Minnesota Department of Human Services (DHS). Daycare services were located primarily in the lower level of the building, which had been constructed as a split-level home. A paved biking and walking path runs behind the facility.

Burke's compliance problems with the DHS began on July 26, 2001, when she received her first correction order for failure to supervise. That afternoon, while the DHS licensor Colleen Peterson was visiting the daycare facility next door to Burke's, Peterson observed a group of children leave Burke's fenced backyard and walk down the bike path. Burke's ten-year-old daughter and two friends had unlocked the gate, intending to take a crayfish to a nearby shallow creek. One four year old and six school-aged daycare children tagged along. Peterson followed and found them one to two blocks away on the path. Burke's daughter released the crayfish into the shallow creek while the daycare children watched from the path. As Peterson and the children returned to the daycare, Burke's sixteen-year-old daughter, who had come to retrieve the daycare children, met them on the path.

Peterson estimated that twelve minutes passed from the time the children exited the backyard to their return to the daycare. Burke knew of the crayfish and had suggested that her daughter dispose of it. At the time the group left, she had been tending to an infant and preparing a celebration for a daycare child's birthday. When she discovered that the whole group had left, she sent her sixteen year old out to bring them back.

Based on the July 26, 2001 correction order, the DHS ordered a one-year conditional license. Burke timely requested reconsideration of the order. One year later, in August 2002, the one-year conditional license decision was affirmed.

In the interim, and apparently unrelated to the pending reconsideration, Burke was the subject of another sanction action by DHS. It was triggered by a death on the night of April 8, 2001 of an infant who had been at Burke's daycare center that day. The child died at the parent's home apparently of sudden infant death syndrome (SIDS). On April 9, Burke phoned the office of the DHS licensor to report the death. That same day, DHS licensor Peterson visited Burke's facility. When she arrived, Burke was on the upper level, and the door to the lower level was closed. When Peterson asked to see the room that the deceased infant had slept in, Burke unlocked the room where two children were sleeping. Burke explained to Peterson that she had locked the door to keep a disruptive child out so other children could nap without disturbance. Since the lock was on the inside, the children other than a toddler, could let themselves out and the key was just outside the room. On this visit, Peterson also observed a child enter the furnace room through an open door.

Based on this visit, the DHS issued another correction order, which noted four violations: failure to supervise, failure to notify the DHS of the SIDS death, failure to secure the furnace-room door, and locking the nap-room door. Three days later, the DHS issued an order revoking Burke's license. In addition to the incidents cited in the second correction order, the order of revocation erroneously stated that on April 8 an infant died while napping in Burke's care. The DHS based the revocation or-

der on Burke's "chronic failure to provide adequate supervision" and the "extremely serious nature of these licensing violations."

Burke appealed the DHS order of revocation. At a hearing before an administrative law judge (ALJ), Peterson and Burke testified, as well as five parents who were confident of Burke's ability to run a daycare and supervise children. Five additional parents, including a DHS employee, submitted affidavits to the effect that they and their children were pleased with the daycare. Burke stated that the children in her daycare have their parents' permission to use the path behind the daycare. As for the April 9 incident, Burke stated that it was not a typical day since it was the day after the apparent SIDS death. She also explained that normally the furnace-room door is closed, but she had just opened it to answer the phone located in the furnace-room.

The ALJ recommended that Burke's license be suspended for two days and conditional for 18 months. In September 2002, the commissioner adopted all of the ALJ's findings. These included the correction that the SIDS death had occurred after the child left the daycare and that Burke had phoned the DHS and reported the incident the next day. With one minor change, the commissioner also adopted the ALJ's conclusions that on July 26 and April 9, Burke failed to supervise by being out of sight or hearing of an infant, toddler, or preschooler and had also failed to make the furnace inaccessible and had locked the nap-room door. But instead of the two-day suspension and 18–month conditional license recommended by the ALJ, the commissioner's order affirmed the DHS's revocation of Burke's license. In the commissioner's memorandum, she stated that Burke "violated numerous licensing rules on an ongoing basis that placed day care children at serious risk of harm." Burke petitioned for appeal by writ of certiorari.

## ISSUE

Did the evidence support the commissioner's decision to revoke relator's daycare license?

## ANALYSIS

Administrative-agency decisions enjoy a presumption of correctness and may be reversed only when they are arbitrary and capricious, exceed the agency's jurisdiction or statutory authority, are made upon unlawful procedure, reflect an error of law, or are unsupported by substantial evidence in view of the entire record. Minn.Stat. § 14.69 (2002) (also providing for reversal or modification if decision is in violation of constitutional provisions); *Dep't of Human Servs. v. Muriel Humphrey Residences*, 436 N.W.2d 110, 117 (Minn.App.1989), *review denied* (Minn. Apr. 26, 1989). In reviewing an agency's decision on a legal issue, this court is not bound by the agency's ruling. *Id.* A reviewing court must defer to the agency's fact-finding process and be careful not to substitute its findings for those of the agency. *Dokmo v. Indep. Sch. Dist. No. 11*, 459 N.W.2d 671, 674–75 (Minn.1990). Absent a clear abuse of discretion, a reviewing court must also defer to an agency's choice of sanction. *In re Licenses of Kane*, 473 N.W.2d 869, 877 (Minn.App.1991) (citing *In re License of Haugen*, 278 N.W.2d 75, 80 n. 10 (Minn.1979)), *review denied* (Minn. Sept. 25, 1991).

Minnesota's Human Services Licensing Act authorizes the commissioner to impose any one of various sanctions when a licensee fails to comply with an applicable law or rule or term of a correction order or conditional license. Minn.Stat. §§ 245A.06–.07 (2002). The commission-

er may issue a correction order or conditional license, suspend or revoke a license, impose a fine, or secure an injunction. Minn.Stat. §§ 245A.06, subds. 1–3, .07, subds. 1, 3. Licensors and inspectors may also place the license holder on probation. Minn. R. 9543.0100, subp. 5. Before imposing any sanction, the commissioner "shall consider the nature, chronicity, or severity of the violation of law or rule and the effect of the violation on the health, safety, or rights of persons served by the program." Minn.Stat. §§ 245A.06, subd.1, 245A.07, subd. 1.

DHS agency rules divide possible daycare license sanctions into three main types of enforcement actions: issuance of correction orders, probation, and negative licensing actions. Minn. R. 9543.1050, subps. 1, 7. Within the negative licensing actions are suspension, immediate suspension, and revocation. Minn. R. 9543.1060. The rules reflect a relative hierarchy of sanctions, increasingly severe based on the effect of the violations.

Revocation is appropriate when "continued operation of the program is not in the best interest of persons served by the program and would pose an unacceptable risk of harm to persons served by the program." *Id.*, subp. 4. Suspension, a less severe sanction, is available when it is "in the best interests of persons served * * * and would not pose a risk of harm to persons served by the program." *Id.*, subp. 5. Probation is available when the commissioner determines that revocation, suspension, and immediate suspension are not warranted. Minn. R. 9543.1050, subp. 7. Finally, correction orders, the least severe sanction, may be issued if the violation can be corrected within a reasonable time and the violation does not imminently endanger the health, safety, or rights of the people served by the program. *See* Minn.Stat. § 245A.06, subd. 1; Minn. R. 9543.1050, subp. 1.

The statutory standard for sanctioning violations of daycare rules requires consideration of the nature, chronicity, or severity of the violations and their effect on those served by the program. Minn.Stat. §§ 245A.06, subd. 1, .07, subd. 1. The rules elaborate on this standard by requiring that the commissioner also consider before imposing a negative licensing action:

A.  the laws or rules that have been violated;

B.  the nature and severity of each violation;

C.  whether the violation is recurring or nonrecurring;

D.  the effect of the violation on persons served by the program;

E.  an evaluation of the risk of harm to persons served by the program;

F.  any evaluations of the program by persons served or their families;

G.  relevant facts, conditions, and circumstances concerning the operation of the program; and

H.  any aggravating or mitigating factors related to the violation.

Minn. R. 9543.1060, subp. 2. While we are mindful that the commissioner has broad discretion in fashioning an appropriate sanction, we conclude that the statute and rules detail the many considerations involved in an enforcement action to ensure that the commissioner exercises that discretion within distinct parameters.

■ The record reflects that Burke had operated the daycare without incident for the three years prior to the first correction order. Then there were only two incidents in which a total of three rules were violated in a nine-month period. While the DHS considered the first incident "serious," it constituted one rule violation— failure to supervise a preschool child for approximately twelve minutes when he followed a group of children down a path.

The DHS did not place Burke on probation, and waited over 12 months to reconsider and affirm the conditional license decision. This delay does not indicate grave DHS concern over the incident. In contrast, one week after the second incident, the DHS issued an order of revocation. But that order was partially based on erroneous findings that Burke had failed to comply with the terms of the conditional license, an infant had died while napping in Burke's care, and Burke failed to report the death. Some of these erroneous findings are of utmost gravity. Absent these erroneous findings, the violations cited in the second correction order were failure to supervise by being out of sight and hearing of an infant, a toddler, or a preschooler, not securing the furnace-room door, and locking the nap-room door. These remaining violations do not appear to be significantly more serious than those cited in the first correction order.

The licensing act and rules also require that the sanction take into consideration the effect of the violation on the people served by the program. While Burke does not dispute the violations, she submitted the testimony of persons served by the program who indicated that revocation was not in their best interests or their children's best interests. The testimony indicated these people did not consider their children to be in any risk of harm. One of the parents was a DHS employee. The commissioner's decision was silent as to this testimony and other mitigating factors offered to explain the circumstances surrounding the violations.

This court has determined that the severity of an administrative sanction must reflect the seriousness of the violation. Revocation of a real estate broker's license for improperly withdrawing earnest money from a trust account was deemed too drastic a sanction in *In re License of Haugen,* 278 N.W.2d at 81. Similarly, in *In re License of Kane,* this court reversed an insurance license revocation for misrepresentations to senior citizens finding that revocation exceeded the action necessary to protect the public and to deter such conduct in the future. 473 N.W.2d at 878. While licensing and monitoring of child-care facilities is unique and requires heightened scrutiny to protect a vulnerable segment of our population prone to harm and injury, we conclude that the statute and rules provide the guidelines necessary to provide balance to protect the license holder as well. As in *Kane* and *Haugen,* the commissioner's choice of sanction must not exceed the seriousness of the violation and must be supported by the record.

There is no evidence in this case of deliberate or callous disregard for the children. Nor is there evidence of injury or near injury to the children. In addition, parents have come to the defense of the license holder. The commissioner's decision to terminate Burke's daycare business by revoking her license was initially based on several erroneous grounds, and is too severe, and is not supported by the record. This court does not determine sanctions; we only review for abuse of discretion. If the commissioner determines that negative licensing action is necessary in this situation, an explanation of that decision should be provided considering the nature of the conduct and the choice among sanctions. Here, such an analysis was not made.

## DECISION

We reverse the commissioner's order for revocation and remand for reconsideration of a lesser sanction consistent with this opinion and with the statutes and rules of the DHS.

**Reversed and remanded.**