*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1169**

In the Matter of the Temporary Immediate Suspension
of the Family Child Care License of Angie Mattison.

**Filed May 23, 2016**
**Affirmed**
**Halbrooks, Judge**

Department of Human Services
OAH File No. 20-1801-32519

Jonathan Geffen, Arneson & Geffen, PLLC, Minneapolis, Minnesota (for appellant Angie Mattison)

Lori Swanson, Attorney General, Kristine Hartman Word, Assistant Attorney General, St. Paul, Minnesota; and

Karin Sonneman, Winona County Attorney, Susan E. Cooper, Assistant County Attorney, Winona, Minnesota (for respondent Minnesota Department of Human Services)

Considered and decided by Halbrooks, Presiding Judge; Bjorkman, Judge; and Toussaint, Judge.*

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**HALBROOKS**, Judge

Relator challenges respondent commissioner of human service's temporary immediate suspension of her child-care license based on findings of improper supervision, arguing that the commissioner's decision is unsupported by substantial evidence. We affirm.

**FACTS**

On May 6, 2015, relator Angie Mattison was caring for four young children, including her 25-month-old son, M.M., in the licensed daycare that she operated out of her home. Around 9:00 a.m., Mattison took the children outside to the fully fenced yard. She remained in the front yard with three of the children, while M.M. played in the backyard. Mattison believed that she could see and hear M.M. from the front corner of the front yard. At some point, M.M. left the backyard through a gate that was not fully secured. When Mattison realized that M.M. was missing, she left the three other children alone in the yard and ran to a neighbor's house, seeking assistance. Meanwhile, two to two-and-a-half blocks away, a driver spotted M.M. running toward a busy street. The driver pulled over, stopped M.M., called the police, and walked M.M. home to Mattison. Later that day, a child-protection worker and a licensing worker from Winona County Community Services made an unannounced visit to Mattison's home, and respondent Minnesota Department of Human Services ordered the temporary immediate suspension of Mattison's child-care license.

Mattison appealed, and a hearing was held. The administrative law judge recommended that the temporary immediate suspension remain in effect. The commissioner of human services subsequently issued a final order affirming the temporary immediate suspension of Mattison's license. This certiorari appeal follows.

**D E C I S I O N**

Administrative-agency decisions are presumed to be correct and "may be reversed only when they are arbitrary and capricious, exceed the agency's jurisdiction or statutory authority, are made upon unlawful procedure, reflect an error of law, or are unsupported by substantial evidence in view of the entire record." *In re Revocation of the Family Child Care License of Burke*, 666 N.W.2d 724, 726 (Minn. App. 2003); *see also* Minn. Stat. § 14.69 (2014). Substantial evidence is "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 466 (Minn. 2002).

"A reviewing court must defer to the agency's fact-finding process and be careful not to substitute its findings for those of the agency." *Burke*, 666 N.W.2d at 726. We will not retry facts or make credibility determinations. *In re Appeal of Rocheleau*, 686 N.W.2d 882, 891 (Minn. App. 2004), *review denied* (Minn. Dec. 22, 2004). But we are not bound by the agency's ruling on matters of law. *Burke*, 666 N.W.2d at 726.

By statute, the commissioner shall immediately temporarily suspend the license of a child-care provider if the provider's actions, failure to comply with law or regulations,

3

or program conditions "pose an imminent risk of harm to the health, safety, or rights of persons served by the program." Minn. Stat. § 245A.07, subd. 2(a)(1) (Supp. 2015). A provider may demand an expedited hearing to consider whether the commissioner has shown reasonable cause for the immediate suspension. *Id.*, subd. 2a(a) (Supp. 2015). "Reasonable cause" requires "specific articulable facts or circumstances which provide the commissioner with a reasonable suspicion that there is an imminent risk of harm to the health, safety, or rights of persons served." *Id.*

Minnesota law requires that a provider must be "within sight or hearing of an infant, toddler, or preschooler at all times so that the caregiver is capable of intervening to protect the health and safety of the child." Minn. R. 9502.0315, subp. 29a (2015). The commissioner found that Mattison did not provide proper supervision because she was not in sight or hearing of M.M., which allowed him to leave the backyard and wander into the community. Therefore, the commissioner concluded, reasonable cause existed to believe that Mattison failed to act in compliance with the law and posed an imminent risk of harm to the children in her care. Minn. Stat. § 245A.07, subd. 2a(a).

Mattison argues that the commissioner's decision is not supported by substantial evidence. She contends that the commissioner's determination on imminent risk of harm cannot be reconciled with the child-protection investigator's decision not to recommend immediate removal of M.M. or his siblings from the home. We disagree. Although the child-protection worker and licensing worker conducted their visit together, they served different functions and applied different standards. *Compare* Minn. Stat. § 245A.07, subd. 2a(a) (requiring "reasonable cause" to believe the daycare provider poses an

4

imminent risk to the health, safety, or rights of the persons served to affirm an order for the temporary immediate suspension of a family child-care license), *with* Minn. Stat. § 260C.151, subd. 6 (2014) (allowing a court to order an officer to take a child into immediate custody if "there are reasonable grounds to believe the child is in surroundings or conditions which endanger the child's health, safety, or welfare that require that responsibility for the child's care and custody be immediately assumed by the responsible social services agency and that continuation of the child in the custody of the parent or guardian is contrary to the child's welfare").

Mattison also argues that there is no "imminent risk of harm" because her back gate has been rendered inoperable. The commissioner disagreed, concluding that securing the back gate was less important than improvements to supervision practices, which Mattison had no plans to make. This conclusion is supported by Mattison's own testimony that, despite this experience, she would not change her supervision practices and would continue to allow the children to play in the backyard and the front yard at the same time. Mattison also argues that there is no threat of imminent harm because she was not planning to resume daycare operations until December 2015. But without the temporary immediate suspension of her license, Mattison could have elected to reopen her daycare at any time.

Finally, Mattison argues that the suspension of her license is essentially an imposition of strict liability, because M.M. left the yard despite being within Mattison's sight and hearing. But the commissioner found, based on Mattison's testimony, that she did not see M.M. leave the yard. And although Mattison testified that she thought she

5

could hear what was happening in the backyard, she did not hear M.M. leave the yard. Thus, the conclusion that Mattison was not in sight or hearing of M.M. is supported by substantial evidence.

The commissioner concluded that Mattison's inadequate supervision coupled with her refusal to change her supervision practices provided reasonable cause to believe that her failure to comply with the applicable standard for supervision poses an imminent risk of harm to the health, safety, or rights of the children in her care. Because the commissioner's decision is supported by substantial evidence in view of the entire record, we affirm.

**Affirmed.**