*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1470**

In the Matter of the Appeal by Kind Heart Daycare, Inc.
of the Order of License Revocation

and

the Appeal by Yasmin Muhina Salim
of the Disqualification Determination

vs.

Commissioner of Human Services.

**Filed July 25, 2016
Affirmed
Ross, Judge**

Minnesota Department of Human Services
OAH Docket No. 5-1800-31716

Daniel J. Bellig, Joseph A. Gangi, Farrish Johnson Law Office, Chtd., Mankato, Minnesota (for relators)

Lori Swanson, Attorney General, Kelly L. Meehan, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Cleary, Chief Judge; and

Ross, Judge.

**UNPUBLISHED OPINION**

**ROSS**, Judge

The commissioner of human services determined that Kind Heart Daycare operator Yasmin Salim scammed the state's Child Care Assistance Program out of $9,766 using exaggerated billing statements that falsely represented that the daycare provided child care for children who were either absent or no longer enrolled. The commissioner disqualified Salim and revoked the daycare's license. On Salim's appeal, we hold that the commissioner correctly applied the law, did not follow unlawful procedures, and did not act arbitrarily and capriciously. We therefore affirm Salim's disqualification and the commissioner's decision to revoke the daycare's license.

## FACTS

The Blue Earth County Sheriff's Office received reports in spring 2014 that Mankato daycare Kind Heart Daycare Inc. had submitted bills for Child Care Assistance Program (CCAP) payments for children as though they were present when in fact they had been absent. Investigators compared the daycare's attendance records to the billing forms that daycare owner Yasmin Salim submitted for assistance funds, and they noticed that for several months the daycare had erroneously billed for its services.

The state accused Salim of wrongfully obtaining child care assistance in violation of Minnesota Statutes section 256.98 (2014), by erroneously billing the assistance program between January and April 2014. Minnesota Department of Human Services (DHS) staff attorney Jill Sholts completed a preponderance of evidence (POE) review based on the investigation, and the department disqualified Salim from providing direct-contact services

to persons served by licensed facilities based on its conclusion that she likely violated section 256.98. The DHS also revoked Kind Heart's license based on Salim's controlling interest in the daycare. The DHS authorized the daycare to continue operating pending a final order from the commissioner, on specified conditions. The DHS inspected Kind Heart and supplementally revoked its license, citing 14 violations.

Salim asked the DHS to rescind or set aside her disqualification. The DHS denied her request. Salim initiated a contested case hearing, where an administrative-law judge heard competing testimony about who submitted the erroneous billings. Diane Sorensen, the former director at the daycare, testified that she was responsible for the billing until two weeks before she resigned from the daycare on March 14, 2014. Kim Patterson, who became assistant director when Sorensen departed, testified that she submitted bills only once after Sorensen left and that Salim otherwise submitted the bills. Salim denied this and blamed Patterson, claiming that Salim had not submitted any bills.

The administrative-law judge found that Sorensen alone submitted the daycare's bills from October 2013 until March 3, 2014. The judge found some errors in the billing before Sorensen left but found that the errors increased substantially afterward. He found that from March 11 through May 13, 2014, the bills were submitted by Patterson and Salim and that their billing included a "pattern of errors" that "demonstrated incompetence . . . and dishonesty." He found that although some of the errors favored the government, "most occurred in favor of Kind Heart," conferring a $9,434 windfall for services claimed but never provided between January 1 and April 30, 2014. The judge recommended that the commissioner affirm Salim's disqualification. He considered the credibility of Salim's

3

claimed innocence and found that it was more likely than not that Salim either submitted the erroneous bills herself or knew of their inaccuracy but failed to correct them.

The administrative-law judge deemed the violations "not serious or chronic," however, and recommended that Salim's disqualification be set aside and that the order revoking Kind Heart's license be rescinded. He reasoned that Salim "poses no risk of harm to the children or families" that the daycare serves, emphasizing that the clients have "unique needs" as Somali immigrant families.

The parties filed exceptions to the commissioner of human services. The commissioner issued a final order correcting the administrative-law judge's findings to conclude that the total erroneously billed was $9,766. The commissioner adopted the administrative-law judge's conclusion that Salim's disqualification had been appropriate but rejected his set-aside and revocation-rescission recommendations.

Salim appeals by writ of certiorari.

## DECISION

Salim challenges the commissioner's decision to revoke her license and, as a consequence, Kind Heart's license. We presume that administrative-agency decisions are correct and reverse them "only when they are arbitrary and capricious, exceed the agency's jurisdiction or statutory authority, are made upon unlawful procedure, reflect an error of law, or are unsupported by substantial evidence in view of the entire record." *In re Family Child Care License of Burke*, 666 N.W.2d 724, 726 (Minn. App. 2003); *see also* Minn. Stat. § 14.69 (2014). We defer to the agency's fact-findings and will not replace those findings with our own. *In re Rocheleau*, 686 N.W.2d 882, 891 (Minn. App. 2004), *review*

4

*denied* (Minn. Dec. 22, 2004). By contrast, we are not bound by the agency's ruling on matters of law. *Burke*, 666 N.W.2d at 726. Salim argues that she should not have been disqualified from providing services, that the commissioner should have set aside the disqualification, and that the commissioner should not have revoked Kind Heart's license. We take the arguments in turn.

**I**

Salim first challenges her disqualification from providing direct-contact services to persons served by licensed facilities. The DHS must disqualify a person from licensed programs if a preponderance of the evidence shows that she has committed a disqualifying crime. Minn. Stat. § 245C.14, subd. 1(a)(2) (Supp. 2015). The commissioner disqualified Salim on the basis of theft as defined by Minnesota Statutes section 256.98, subdivision 1(1) and (3) (2014). That statute provides in relevant part as follows:

> A person who commits any of the following acts or omissions with intent to defeat the purposes of . . . child care assistance programs . . . is guilty of theft[:]
> . . .
> (1) obtains or attempts to obtain, or aids or abets any person to obtain by means of a willfully false statement or representation, by intentional concealment of any material fact, or by impersonation or other fraudulent device, assistance or the continued receipt of assistance, to include child care assistance . . . to which the person is not entitled or assistance greater than that to which the person is entitled;
> . . .
> (3) obtains or attempts to obtain, alone or in collusion with others, the receipt of payments to which the individual is not entitled as a provider of subsidized child care, or by furnishing or concurring in a willfully false claim for child care assistance.

Salim argues that her disqualification was based on unlawful procedure, is arbitrary and capricious, is unsupported by substantial evidence, and results from an error of law concerning her legal entitlement to the absence-day payments. None of these arguments persuades us to reverse.

### *Unlawful Procedure*

Salim maintains that the commissioner engaged in unlawful procedure. She says she was disqualified based merely on probable cause rather than on the higher proof standard of a preponderance of the evidence. The argument has initial appeal but then fades. Salim points out that staff attorney Sholts's POE determination seems to rest entirely on the police report indicating that Salim was charged with a disqualifying crime. Sholts confirmed this when she testified at the contested case hearing, revealing that she believes that probable cause is a higher standard of proof than preponderance of the evidence. Sholts misunderstands the standards of proof. Probable cause is a lower, not higher standard. "Unlike proof beyond a reasonable doubt or preponderance of the evidence, probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *State v. Harris*, 589 N.W.2d 782, 790–91 (Minn. 1999) (quotation omitted).

Despite Sholts's misconception, Salim's argument fails because it ignores the fact that the administrative-law judge's findings and the commissioner's ultimate disqualification decision rest expressly on the proper preponderance-of-the-evidence standard of proof. The record indicates that the judge and commissioner's designee based their decisions on the evidence presented at the contested case hearing, not on the police

report. In fact the administrative-law judge acknowledged Sholts's error directly and emphasized that his decision was based on the preponderance of the evidence. Salim has not demonstrated that the disqualification decision rests on an unlawful procedure.

***Arbitrary and Capricious***

Salim argues that the disqualification decision was arbitrary and capricious. An agency decision is arbitrary and capricious if the agency relied on factors not intended by the legislature, if an important aspect of the problem was ignored, if the explanation for its decision is against the evidence, or if its decision is so implausible it could not be attributed to a difference in view or agency expertise. *Minn. Transitions Charter Sch. v. Comm'r of Minn. Dep't of Educ.*, 844 N.W.2d 223, 235 (Minn. App. 2014), *review denied* (Minn. May 28, 2014). An agency also acts arbitrarily when its decision is the product of its will rather than its judgment. *Id.*

Salim argues that the department acted arbitrarily by having already made up its mind to disqualify her as early as the POE review. She bases this argument on an email between DHS attorneys that included the statement, "Be a part of history in the making," in the subject line. Context suggests that this statement refers only to the first-of-its-kind nature of a prosecution for child care-assistance fraud. In the email, a supervising DHS attorney asks for a volunteer to perform Salim's POE review because it needed to be done "right away." Sholts responded that she would perform the review. Based on the email exchange Salim asserts, "It is apparent Sholts was simply doing what she was instructed to do—disqualify [her] 'right away.'" The email does not support Salim's conclusion. The

email indicates only that a POE review, not a disqualification, needed to occur "right away." And Sholts testified that she did not feel pressured to disqualify Salim.

Salim next points to the supplemental revocation order as evidence that the commissioner's decision was not reasoned. Salim identifies nothing in the record to suggest that the commissioner's decision lacked deliberation or was based on pretext. She argues instead that many of the violations cited in the supplemental order were based on misrepresentations of statements made by daycare staff, and she maintains that the state's witnesses provided only conclusory, after-the-fact justifications for the initial, flawed POE determination. Her arguments implicitly ask us to reweigh the evidence. But it is not our prerogative to do so, *Vargas v. Nw. Area Found.*, 673 N.W.2d 200, 205 (Minn. App. 2004), *review denied* (Minn. Mar. 30, 2004), or to replace the fact-finder's credibility findings with our own, *Rocheleau*, 686 N.W.2d at 891.

Salim's most persuasive argument on this issue is her contention that the commissioner appears to have acted arbitrarily by rejecting one of the administrative-law judge's findings without any explanation. But this argument also ultimately fails. An agency is not bound to an administrative-law judge's report after a contested-case hearing. *In re Denial of Eller Media Co.'s Applications for Outdoor Advert. Device Permits*, 664 N.W.2d 1, 6 (Minn. 2003). And the agency decisionmaker owes no particular deference to the judge's findings, conclusions, or recommendations. *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 278 (Minn. 2001). But Minnesota Statutes section 14.62, subdivision 1 (2014), requires an agency to give reasons for modifying an administrative-law judge's findings of fact, conclusions, or recommendation, and failure

8

to do so suggests that the agency's decision was arbitrary and capricious. *Bloomquist v. Comm'r of Nat. Res.*, 704 N.W.2d 184, 190 (Minn. App. 2005). Salim points out that the commissioner's designee failed to explain why he struck the judge's finding of Salim's motive for submitting the false billing statements. In particular, the judge found, "[T]he purpose of [Salim's] activity was to aid families in obtaining and keeping access to child care." Salim asserts that the finding's deletion unfairly prevented her from arguing that she did not act with the intent "to defeat the purpose of . . . child care assistance programs." *See* Minn. Stat. § 256.98, subd. 1.

Salim is correct that the commissioner did not expressly explain why she struck that particular finding, but we will not reverse on this ground. The administrative-law judge more fully characterized the finding of Salim's intent as her "'Robin Hood-like' approach to her concerns about the County's handling of child care assistance." The deleted intent finding that Salim essentially lied in order to steal money to help her clients does not contradict her intent to "defeat the purpose of . . . [a] child care assistance program[]." The two intents are perfectly consistent: deliberately falsifying billing entries in order to draw aid for services that *have not been* provided intentionally defeats the program's purpose of extending aid for services that *have been* provided. Even if, in someone's sense of fairness, Robin Hood could truly justify stealing from the rich so that he could give to the poor, Salim fails even the Robin Hood justification; she was essentially skimming from program funds that were earmarked *for the poor*, not the rich. Anyway, the commissioner's designee implicitly and reasonably explained why he rejected the finding, saying, "Billing for services that were not provided and billing for days for which Minnesota law prohibits

9

payment defeats, rather than advances, the purposes of the program." Omitting the administrative-law judge's euphemistic explanation of Salim's intent was not improper. It was sufficiently explained, and alternatively, the original finding was not material to or conflicting with the commissioner's conclusion.

### *Substantial Evidence*

Salim argues that substantial evidence does not support the commissioner's conclusion that she unlawfully obtained child care assistance. Substantial evidence means: "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Cannon v. Minneapolis Police Dep't*, 783 N.W.2d 182, 189 (Minn. App. 2010) (quotation omitted).

Salim maintains that there is no evidence that she herself submitted the erroneous bills or that she allowed them to be submitted knowing they were false. She is wrong. Patterson testified that she submitted only two weeks' worth of bills after Sorensen's departure and that Salim submitted all others. Salim denied submitting any bills and put all the blame on Patterson. On appeal, we "defer to an agency's conclusions regarding conflicts in testimony." *Blue Cross & Blue Shield*, 624 N.W.2d at 278. The administrative-law judge concluded that Salim either submitted the erroneous bills herself or she knew of the erroneous bills and did nothing to correct them. The commissioner adopted that finding. The finding is supported amply by documentary and testimonial evidence and by reasonable inferences from the circumstances. We accept the finding.

Salim argues next that even if she submitted some of the bills, the evidence cannot support a conclusion that she acted with the specific intent to defeat the purpose of the child care assistance program. We have already explained why the argument fails. We add here that, by finding that Salim unlawfully obtained assistance, the commissioner made an implicit finding of fact that Salim intended fraud. *See Welch v. Comm'r of Pub. Safety*, 545 N.W.2d 692, 694 (Minn. App. 1996) (stating that when a reviewing court is able to infer findings from the district court's conclusions, it is not necessary to remand the case for additional findings of fact). Salim's argument that the evidence does not support a finding that she acted with intent to defraud also overlooks the fact that the commissioner accepted the judge's finding that she submitted or knew about the erroneous bills and that intent may be established by inferences from a person's actions. *State v. Andrews*, 388 N.W.2d 723, 728 (Minn. 1986). Our review of the record informs us that substantial evidence allows the commissioner to conclude that Salim had the requisite intent to defraud. This evidence consists, among other things, of Salim's submission of the erroneous bills and the fact that payments were deposited in her checking account.

We are similarly unpersuaded by Salim's contention that the commissioner incorrectly applied a negligence standard to an intent-based crime. We are satisfied from the record that the commissioner applied the correct standard.

***Legally-Entitled Challenge***

Salim argues that the commissioner erred as a matter of law because she was entitled to bill 25 absent days per child. Salim is correct that qualifying daycare providers may bill up to 25 absent days. Minn. Stat. § 119B.13, subd. 7(a) (2014); Minn. R. 3400.110, subp.

11

9 (2015). But providers must mark absences with "A" on the bills they submit or the statutory cap is unenforceable, and Salim failed to so mark the submissions. Her argument also overlooks the fact that some of the false entries did not concern children who were merely absent but who were no longer even enrolled in the daycare.

Salim maintains that she was "entitled" to the payments regardless of whether absences were correctly noted in the bills she submitted. She cites this provision of the CCAP guidance manual:

> Licensed providers may bill CCAP for absent days if:
>
> - The care was authorized by CCAP and scheduled by the parent, but the child was absent AND
> - It is the provider's policy to bill all of their families for absent days AND
> - The schedule hours are identified in the provider's attendance records as an absent day AND
> - The care is available.

The argument is unavailing. It ignores the additional requirement just mentioned, that providers must accurately designate absences on their billing forms. The manual warns, "Providers who give false information on a *Billing Form* . . . could face criminal charges."

We reject Salim's related argument that her obtaining child care assistance funds with false billing statements does not become unlawful until the 26th payment. She draws a comparison to prescription fraud and cites a Wisconsin case holding that attempted fraudulent acquisition of a controlled substance is not a crime until the person who presents an altered prescription tries to get more medication than is lawful. *State v. Henthorn*, 581 N.W.2d 544, 546–47 (Wis. Ct. App. 1998), *review denied* (Wis. June 12, 1998). Even if we were bound by Wisconsin caselaw (we are not), the cited case is easily distinguished.

12

Salim was not entitled to *any* payment unless she "[f]ill[ed] in an 'A' for any day the child [was] absent." And even if she were entitled to 25 days' worth of payments regardless of what she indicated in the billing form, some of the false billing in this case included more than 25 absences.

**II**

Salim argues that the commissioner erred by not setting aside her disqualification. After a request for reconsideration, the commissioner *may* (not *must*) set aside a disqualification if "the individual has submitted sufficient information to demonstrate that the individual does not pose a risk of harm to any person served by the applicant, license holder, or other entities as provided in [chapter 245C]." Minn. Stat. § 245C.22, subd. 4(a) (2014). The disqualified individual bears the burden of showing that she does not pose any risk of harm. *See id.* When addressing an individual's reconsideration request, the commissioner must consider nine factors. *Id.*, subd. 4(b)(1)–(9) (2014). Any one factor may be dispositive, but preeminent weight goes to the safety of the individuals served. Minn. Stat. § 245C.22, subd. 3 (2014).

The administrative-law judge found that Salim did not pose a risk of harm to the children served by Kind Heart. The commissioner rejected that finding, concluding that Salim's fraudulent billing suggests possible dishonesty in other situations, potentially exposing the daycare children to harm. The commissioner took a "broader view" than the judge and found that the county, the department of human services, taxpayers, and families waiting to receive CCAP assistance were also harmed by the fraudulent billing. Apparently relying on the first factor, which concerns the nature, severity, and consequences of the

13

events that led to disqualification, *id.*, subd. 4(b)(1), the commissioner determined that Salim's fraudulent billing alone was sufficient to reject her set-aside request. The commissioner further noted that Salim's fraudulent bills were "recent and numerous," totaling $9,766 over a four-month period, and that Salim refused to take responsibility for her illegal actions.

Salim counters, maintaining that the commissioner's conclusion is arbitrary and unsupported by substantial evidence because no evidence suggests a waiting list for CCAP assistance. She is mistaken. A human services staff attorney testified that she "believe[d] there's a long waiting list for individuals seeking to receive assistance," and that "if those funds are being used improperly, the individuals who need them are not able to have access to them." The testimony was not refuted and the finding is therefore supported.

Salim next maintains that the commissioner's "broader view" of harm fails to give preeminent weight to the safety of the children served by the daycare and that the human services attorney who conducted the risk-of-harm assessment did not consider affidavits from parents attesting to the safety of the daycare. The record informs us that the attorney did in fact testify that she considered the affidavits. The commissioner's findings also refer to the affidavits. And even if the children and families served by Kind Heart saw no harm and even arguably somehow benefited from Salim's dishonest billing practices, the commissioner was not prohibited from considering that funds stolen from the CCAP by Salim are no longer available for those qualifying families on a waiting list. Salim's refusal to take responsibility for the theft also does not suggest that she intends to stop the practice. We are satisfied that the commissioner appropriately reasoned through the reconsideration

14

request based on the statutory factors, and we repeat that subdivision 4(a) permits, but does not require, a set aside.

## III

Salim and Kind Heart contend finally that the commissioner erred by revoking Kind Heart's license. The commissioner can revoke a facility's license when the facility or a controlling individual has been disqualified. Minn. Stat. § 245A.07, subds. 1, 3(a)(2) (2014). Because the commissioner did not err by disqualifying Salim as the controlling individual or by declining to set aside her disqualification, the commissioner acted within her authority by revoking Kind Heart's license.

**Affirmed.**