*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1944**

In the Matter of the SIRS Appeal of Gary L. Johnson
and
In the Matter of the SIRS Appeal of Joshawa J. Johnson

**Filed November 7, 2016
Affirmed
Cleary, Chief Judge**

Department of Human Services
File Nos. OAH 82-1800-32171 and OAH 82-1800-32172

Gary L. Johnson, Bertha, Minnesota (pro so relator); and

Joshawa J. Johnson, Wadena, Minnesota (pro se relator)

Lori Swanson, Attorney General, Marsha Eldot Devine, Assistant Attorney General, St. Paul, Minnesota (for Commissioner of Department of Human Services)

Considered and decided by Cleary, Chief Judge; Peterson, Judge; and Worke, Judge.

# UNPUBLISHED OPINION

**CLEARY**, Chief Judge

On appeal from their one-year suspensions from participating as personal care assistants in the Minnesota Health Care Program (MHCP), relators Gary L. Johnson and Joshawa J. Johnson argue that the department of human services (DHS) exceeded its authority, made an error of law, acted by an unlawful procedure, and rendered arbitrary

and capricious decisions. Because relators have failed to establish a basis for disturbing DHS's decisions, we affirm the commissioner's orders suspending relators for one year.

## FACTS

Relators were personal care assistants (PCAs) employed by Tender Hearts Home Care (Tender Hearts). Relators provided PCA services to R.J. and were paid with Medicaid funds through MHCP. To be paid, relators filled out and signed daily-time records, and Tender Hearts reported relators' time to DHS.

The Surveillance and Integrity Review Section (SIRS) unit of DHS received a report that Joshawa Johnson may have been falsifying his timecards for Tender Hearts and assigned the suspected fraud investigation to a SIRS investigator. The data reviewed in the investigation of Joshawa Johnson revealed that Gary Johnson may also have been falsifying his timecards. The investigator determined that the preliminary data appeared to support conducting a comprehensive investigation and requested records from Tender Hearts. The records received from Tender Hearts included a cover letter from Tender Hearts' owner, which acknowledged that relators were not in compliance and that there had been a lack of qualified professional visits. SIRS leadership authorized the issuance of subpoenas to obtain relators' employment records, and subpoenas were served upon relators' employers.

A review of the time records revealed direct overlaps of certain times when a relator worked for a non-PCA employer and times when that relator reported providing PCA services. For example, Gary Johnson submitted a PCA timesheet stating that he performed PCA services from 8:00 a.m. to 4:00 p.m. on September 8, 2013, while his employment

2

records showed that he worked at Wensman Seed Company from 4:21 a.m. to 3:19 p.m. that day. Joshawa Johnson submitted a PCA timesheet stating that he performed PCA services from 6:00 a.m. to 3:00 p.m. on August 1, 2013, while his employment records showed that he worked from 6:00 a.m. to 5:00 p.m. at Central Minnesota Masonry. Overpayments for the period audited totaled $733.04 for Gary Johnson and $3,723.83 for Joshawa Johnson.

Relators signed multiple timesheets acknowledging that it is a federal crime to provide false information on PCA billings and that their signatures verified that the time and services entered were accurate and performed as specified in the care plan. These time records were also required to be signed by a responsible party. The responsible party's signatures on relators' timesheets appeared to be identical across multiple timesheets, indicating that the timesheets may have been signed beforehand and photocopied.

On July 30, 2014, DHS sent each relator a notice, stating that each would be suspended from MHCP beginning 30 days after July 30, 2014 and each had a right to appeal. Gary Johnson was notified of a one-year suspension, while Joshawa Johnson was notified of a two-year suspension. Relators timely appealed. Based on an internal review, DHS determined the suspensions were appropriate.

On March 3, 2015, an administrative law judge (ALJ) issued an order requiring the parties to exchange and file their proposed exhibit and witness lists by April 20, 2015. A consolidated case hearing was held on May 1, 2015, and the ALJ heard testimony from Gary Johnson, Joshawa Johnson, and the SIRS investigator. The investigator testified about his investigation, his recommendation, and the management team's review. The

3

investigator testified that R.J.'s time journal, which purportedly detailed the time during which relators provided PCA services, was not submitted to DHS with relators' timesheets. Gary Johnson testified that he did the paperwork for both himself and Joshawa Johnson, made clerical errors, and mistakenly thought he was turning in the correct hours. Joshawa Johnson testified that he did not do much with the paperwork and that the times were put in inaccurately.

During the hearing, Gary Johnson informed the ALJ that he spoke with R.J. during a break and that R.J. wished to speak by phone about her daily log. The ALJ told Gary Johnson that it was up to him whether to call R.J. as his witness. DHS stated that it was not challenging whether R.J. kept the time journal and explained that was not the basis for relators' suspensions. The ALJ asked Gary Johnson if the purpose of having R.J. testify was to say that she kept the time journal. Gary Johnson responded, "Okay. That – Yes, that's the only thing. I would only make the assumption she'd have other comments on the fact that we do care for her . . . . But I – I really have nothing else to say . . . . As long as, hopefully, the Court understands that it wasn't intentional." Gary Johnson did not later request to call or attempt to call R.J. as his witness.

The ALJ addressed certain documents that she considered excluding from the hearing. The ALJ explained she would not admit documents relating to training, because whether relators' training was current would have no bearing on the decision. The ALJ asked Gary Johnson what his purpose was for submitting the documents that he sent the day before the hearing. Gary Johnson explained that he thought that the paystubs "were necessary or pertained to this; but as it is, they don't." Gary Johnson did not contest the

4

accuracy of DHS's payroll documents, but noted only that the documents were inaccurate in the sense that he made mistakes by writing down the wrong times. The ALJ explained that she would not admit the documents that were submitted the day before the hearing.

On May 14, 2015, the ALJ issued separate findings of fact, conclusions of law, and recommendations for each relator. In each, the ALJ found that "[t]he Appellant admitted that the PCA hours he reported were erroneous." The ALJ additionally found that "[t]he Appellant's private employment records were reliable and accurate, and the Appellant's own reporting of his PCA time was not reliable or accurate." The ALJ concluded that DHS established by a preponderance of the evidence that relators submitted timecards on which required information was incorrect and which sought reimbursement for personal care assistance that was not reimbursable because it was not provided. The ALJ concluded that this constituted abuse pursuant to Minnesota Statutes section 256B.064, subdivision 1a(1)-(3) (2014), and as defined by Minnesota Rule 9505.2165, subpart 2(A)(1), (3) (2015). The ALJ concluded that DHS considered the nature, chronicity, and severity of relators' conduct and recommended that DHS's determinations and sanctions be upheld.

The record remained open until July 30, 2015. Both parties filed exceptions. The commissioner issued an order with respect to each relator "upon review of the ALJ's recommended order, based upon all the files, records, and proceedings herein." In her October 15, 2015 order, the commissioner found that DHS showed by a preponderance of the evidence that Gary Johnson billed for PCA services that he did not provide in violation of Minnesota Statutes section 256B.064 (2014). Considering the number of misrepresentations, the period over which they occurred, and Gary Johnson's testimony

5

that he completed the paperwork for Joshawa Johnson, the commissioner adopted the ALJ's determination that DHS appropriately suspended Gary Johnson for one year.

In her October 20, 2015 order, the commissioner found that DHS showed by a preponderance of the evidence that Joshawa Johnson billed for PCA services he did not provide in violation of Minnesota Statutes section 256B.064. Considering the number of misrepresentations, the period over which they occurred, and Gary Johnson's testimony that he completed the paperwork for Joshawa Johnson, the commissioner rejected the ALJ's determination that a two-year suspension was appropriate and reduced Joshawa Johnson's suspension to one year.

## D E C I S I O N

"Administrative-agency decisions enjoy a presumption of correctness and may be reversed only when they are arbitrary and capricious, exceed the agency's jurisdiction or statutory authority, are made upon unlawful procedure, reflect an error of law, or are unsupported by substantial evidence in view of the entire record." *In re Revocation of Family Child Care License of Burke*, 666 N.W.2d 724, 726 (Minn. App. 2003); Minn. Stat. § 14.69 (2014). "The relator has the burden of proof when challenging an agency decision . . . ." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 660 N.W.2d 427, 433 (Minn. App. 2003).

Relators argue that DHS acted beyond its statutory authority by suspending them. The commissioner may impose sanctions, including suspensions, against vendors for:

> (1) fraud, theft, or abuse in connection with the provision of medical care to recipients of public assistance; (2) a pattern of presentment of false or duplicate claims or claims for services

6

> not medically necessary; [or] (3) a pattern of making false statements of material facts for the purpose of obtaining greater compensation than that to which the vendor is legally entitled[.]

Minn. Stat. § 256B.064, subds. 1a-1b. When imposing these sanctions, the commissioner must consider the nature, chronicity, or severity of the conduct and the effect of the conduct on the health and safety of persons served by the vendor. *Id.*, subd. 1b. Minnesota Rule 9505.2165 defines "vendor" to include a PCA and defines "abuse" to include submitting repeated claims, or causing claims to be submitted, (1) from which required information is missing or incorrect; (2) using procedure codes that overstate the level or amount of health service provided; or (3) for health services which are not reimbursable under the programs. Minn. R. 9505.2165, subps. 2(A)(1)-(3), 16a.

Relators are vendors who may be sanctioned by the commissioner. The commissioner affirmed that relators "submitted improper claims, specifically false claims, for reimbursement in violation of Minnesota Law." The commissioner properly considered the nature, chronicity, and severity of the violations committed by relators, as well as relators' arguments about the time they spent caring for R.J. The commissioner did not exceed her statutory authority by imposing relators' one-year suspensions.

Relators argue that DHS's decision to suspend them reflects an error of law, but fail to specify what error occurred. Appellate courts "will not consider pro se claims on appeal that are unsupported by either arguments or citations to legal authority." *State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008). Because relators have not identified any error, they have failed to meet their burden to prove that the suspensions reflect an error of law.

7

Relators additionally argue that DHS acted upon an unlawful procedure by failing to interview witnesses, failing to accept all relevant evidence, relying on a non-credible informant, and relying on irrelevant evidence. For the following reasons, we conclude that relators have failed to prove that DHS acted upon an unlawful procedure.

First, relators argue that DHS erroneously failed to interview witnesses. DHS is authorized to "[m]ake uniform rules, not inconsistent with law, for carrying out and enforcing the provisions hereof in an efficient, economical, and impartial manner, and to the end that the medical assistance system may be administered uniformly throughout the state." Minn. Stat. § 256B.04, subd. 2 (2014). Under this authority, DHS promulgated Minnesota Rule 9505.2200 (2015), which specifies the manner in which the agency will identify fraud, theft, abuse, or error. DHS investigates vendors to monitor compliance with program requirements and *may* contact any person, agency, or other entity necessary to an investigation for the purpose of identifying fraud, theft, abuse, or error in the administration of its programs. Minn. R. 9505.2200, subps. 1-3. In its investigation, DHS was permitted to interview a number of persons, but was not required to do so. DHS's failure to interview R.J. was not error. During the hearing, the ALJ told Gary Johnson that it was up to him whether to call R.J. as his witness. The ALJ's failure to receive R.J.'s testimony was not error, as Gary Johnson chose not to call R.J. after the ALJ informed him that he could do so. Relators have failed to prove that DHS acted by an unlawful procedure by failing to interview witnesses.

Relators also assert that DHS failed to accept all relevant evidence. Prior to the hearing in a contested case, the ALJ may order the parties to exchange witness lists and all

8

written exhibits by a certain date. Minn. R. 1400.6950, subp. 1 (2015). Here, the ALJ ordered the parties to exchange and file witness lists and exhibits by April 20, 2015. Although somewhat unclear, it appears that the ALJ excluded only documents that were submitted after this deadline. The record also shows that the ALJ determined that some of the excluded documents had no bearing on the decision and that Gary Johnson admitted during his testimony that the paystubs he submitted did not appear necessary. The ALJ's decision to exclude these documents was not erroneous. Relators have failed to prove that DHS acted by an unlawful procedure by failing to accept all relevant evidence.

Relators argue that DHS relied on irrelevant evidence and a non-credible informant by considering the inaccurate timesheets that relators submitted and the information that Tender Hearts' owner provided. DHS was permitted to review and consider all evidence likely to lead to information relevant to the expenditure of funds, provision of services, or purchase of items. Minn. R. 9505.2200, subp. 3. Similarly, the ALJ was permitted to review the evidence before her. *See* Minn. R. 1400.7300, subp. 1 (2015) (allowing evidence possessing probative value if it is the type which reasonable, prudent persons are accustomed to rely on in conducting serious affairs). Relators have not established that the challenged evidence lacked relevance to the expenditure of funds, provision of services, or purchase of items. As a result, relators have failed to prove that DHS acted by an unlawful procedure by relying on irrelevant evidence and a non-credible informant.

Finally, we review the procedures used by the commissioner. Agency officials issuing the final decision in a contested case may not render the final decision until the ALJ's report has been made available to the parties for at least ten days and each party

9

adversely affected has been afforded an opportunity to file exceptions and present argument to a majority of the officials who will render the decision. Minn. Stat. § 14.61, subd. 1 (2014). The contested case record must close upon the filing of any exceptions and presentation of argument or upon expiration of the deadline for doing so, and the agency must notify the parties and the ALJ of the date when the hearing record is closed. *Id.*, subd. 2 (2014). The decision and order must be written, based on the record, and include the agency's findings of fact and conclusions on all material issues. Minn. Stat. § 14.62, subd. 1 (2014). If the decision or order rejects or modifies a finding of fact, conclusion, or recommendation contained in the ALJ's report, the reasons for each rejection or modification must be included. *Id.*, subd. 2a (2014).

The ALJ issued her findings of fact, conclusions of law, and recommendations on May 14, 2015. Both parties filed exceptions. Relators, respondent, and the ALJ were notified that the record closed on July 30, 2015. The commissioner issued a written order with respect to each relator, "upon review of the ALJ's recommended order, based upon all files, records, and proceedings herein." The orders included the ALJ's findings of fact and conclusions on all material issues, and provided reasons to support each rejection and modification to the ALJ's findings, conclusions, and recommendations. Relators fail to point to any evidence of error and have not met their burden to prove that the commissioner acted upon an unlawful procedure.

Relators assert that the commissioner's suspension decisions are arbitrary and capricious. "A reviewing court must defer to the agency's fact-finding process and be careful not to substitute its findings for those of the agency." *Burke*, 666 N.W.2d at 726.

10

It must also defer to an agency's choice of sanction absent a clear abuse of discretion. *Id.* However, a court is not bound by the agency's ruling on legal issues. *Id.*

The commissioner adopted the following findings of fact made by the ALJ. A review of the time records revealed instances of direct overlaps of certain times when Gary Johnson worked at AgReliant[1] and Masterson and times when Gary Johnson reported providing PCA services to R.J., as well as direct overlaps of certain times when Joshawa Johnson worked at Central Minnesota Masonry and times when Joshawa Johnson was reported as having provided PCA services to R.J. Neither relator disputed the accuracy of his Department of Employment and Economic Development employment records. Each admitted that the PCA hours he reported were erroneous.

The commissioner affirmed the ALJ's determination that each relator had "billed for PCA services that he did not provide." The commissioner also affirmed that relators submitted false claims for reimbursement. Because the commissioner may sanction vendors who submit false claims for reimbursement, the commissioner's findings and determinations, as well as the record, support the imposition of sanctions.

When imposing sanctions, the commissioner must consider the nature, chronicity, or severity of the conduct and the effect of the conduct on the health and safety of persons served by the vendor. Minn. Stat. § 256B.064, subd. 1b. To determine the appropriateness of the recommended suspensions, the commissioner properly considered the length of time over which the misrepresentations occurred, the number of incidents, and the testimony of

---

[1] The ALJ and commissioner found credible the SIRS investigator's explanation that AgReliant is a seed company and is at times referred to as Wensman Seed.

11

Gary Johnson that he completed the paperwork for Joshawa Johnson, who relied on him to accurately account for services rendered. The commissioner did not abuse her discretion by deciding to impose one-year suspensions on relators. Relators have not met their burden to prove that the commissioner's decisions were arbitrary and capricious.

Relators argue they are entitled to receive reimbursement of their expenses. A party who prevails on a writ of certiorari in a civil proceeding is entitled to costs against the adverse party. Minn. Stat. § 606.04 (2014). Because relators have not met their burden in challenging DHS's suspensions, they are not entitled to costs.

Relators also argue that they are entitled to back wages, but admit that the owner of Tender Hearts is responsible for their lack of payment. Because relators have failed to show that DHS is responsible for the challenged non-payment, relators are not entitled to back wages from DHS.

Finally, relators argue that their names and information should be cleared from the record or sealed from the public, but cite no legal authority to support their request. Appellate courts do not consider pro se arguments on appeal that are unsupported by either arguments or citations to legal authority. *Bartylla*, 755 N.W.2d at 22. As a result, we do not reach relators' request.

**Affirmed.**